## COOK v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit. October 13, 1928.

No. 8037.

John T. Harley, of Tulsa, Okl. (D. A. McDougal, of Sapulpa, Okl., on the brief), for plaintiff in error.

John M. Goldesberry, U. S. Atty., of Tulsa, Okl. (W. B. Blair, Asst. U. S. Atty., of Tulsa, Okl., on the brief).

Before STONE and VAN VALKENBURGH, Circuit Judges, and PHILLIPS, District Judge.

PHILLIPS, District Judge. William Cook was indicted, tried, convicted, and sentenced for the offense of conspiracy to violate the National Prohibition Act. 27 USCA. The indictment charged that Jasper Cox and William Cook conspired with Charlie Jimerson to manufacture, transport, and sell intoxicating liquor, to wit, whisky, contrary to the National Prohibition Act. It further specifically charged that Cox, who was a justice of the peace in and for Creek county, Okl., and Cook, who was a constable in and for such county, conspired and agreed with Jimerson that Jimerson should manufacture and sell whisky and beer on a farm 5½ miles northwest of Sapulpa, in Creek county, Okl.; that Cox and Cook should afford Jimerson protection from criminal prosecution for manufacturing, transporting, and selling such intoxicating liquor; and that Jimerson should pay to Cox and Cook the sum of $40 monthly for such protection.

The indictment further charged as the first overt act done to effect the object of the conspiracy that on May 31, 1925, Cox and Cook received from Jimerson the sum of $10 in accordance with such agreement. It charged as the second overt act done to effect the object of such conspiracy that on June 8, 1925, Cox and Cook received from Jimerson the sum of $5 in accordance with such agreement.

Jimerson, called as a witness in behalf of the government, testified that during the months of March, April, May, and June, 1925, he was engaged in giving "Saturday night dances" at the farm described in the indictment; that Cook and Cox visited his home on a Saturday night three to four weeks prior to June 8, 1925; that Cook told Jimerson: "I have got a line on this house and you will have to kick in; * * * you will have to pay about $10.00." That Jimerson said: "Man, that is a lot of money, that is the rate of $40.00 a month one night out of the week." That Cook said, "Oh, well, you sell that whisky and that beer and take that rake off the dice you can get it up." That Jimerson replied: "Well, I will do the best I can." Jimerson further testified that he sold whisky and beer at the dances; that Cox and Cook returned the following Saturday night, and that Cook attempted to take some money off of the dice table; that Jimerson protested, and that Cook then put the money back, and Jimerson agreed to come to Sapulpa the next morning and comply with their previous agreement; that he went to Sapulpa the next morning and paid Cook the sum of $10 near Cook's filling station in Sapulpa; and that the money was part of the proceeds derived from his sales of beer and whisky. Jimerson further testified that on Monday, June 8, 1925, he went with C. B. Aubrey to the office of Cox, and in accordance with his agreement with Cook and Cox gave Cook a $5 bill; and that the police officers had taken a record of the numbers and marks of identification on such bill.

C. B. Aubrey was called as a witness for the government. He testified that in the spring of 1925 Cook came to his place six miles west of Sapulpa and said that he was a constable, and discussed with Aubrey the making of whisky by the latter, and told Aubrey to go ahead and make whisky, and that he would notify Aubrey when they were going to raid him; that one Saturday night thereafter Aubrey saw Cook in Sapulpa and told Cook he knew where he could buy 10 or 15 gallons of whisky for $5 a gallon, and asked if he would be permitted to sell it; that Cook told Aubrey he could sell it if he would pay Cook $25; that Aubrey told Cook he would pay him the $25, but that he would have to pay it in installments; that Aubrey advised Morey, the chief of police, of the arrangement he had made with Cook; that he went with Jimerson to Cox's office the following Monday morning, June 8, 1925, and gave Cook a $10 bill; and that the police had taken a record of the numbers and marks of identification thereon.

Ralph Morey, the chief of police of Sapulpa, testified that Jinks, a prohibition agent, and Coats, a deputy United States marshal, gave Jimerson a $5 bill and Aubrey a $10 bill;

that the officers made a record of the numbers of these bills; and that he placed his initials thereon.

S. B. Jinks, federal prohibition inspector, testified that he watched Aubrey and Jimerson go down into the basement of the Berryhill Building where Cox's office was located and return therefrom, and immediately thereafter he arrested Cook and found on his person the marked bills which had been delivered to Aubrey and Jimerson.

■ Counsel for Cook contend that the indictment is fatally defective, in that it fails to sufficiently charge an overt act done by one of the alleged conspirators to effect the object of the conspiracy. They say that the payment and receipt of the sums of money were a part of the agreement and conspiracy and were in no sense overt acts in furtherance of the object of the conspiracy.

It is well settled that the overt act need not be criminal, much less an act constituting the crime that is the object of the conspiracy. Manning v. U. S. (C. C. A. 8) 275 F. 29, 32. It is true that this money was paid by Jimerson and received by Cox in compliance with the unlawful agreement theretofore entered into between the coconspirators, but such fact does not prevent it from being an act done to effect the object of the conspiracy. The unlawful agreement contemplated that Jimerson should perform the physical acts constituting a violation of the National Prohibition Act, and that Cook and Cox should afford him protection from arrest and prosecution therefor, and that Jimerson should pay Cook and Cox the sum of $10 per week from the moneys realized from the sale of the intoxicating liquor and from the dice game. It is our opinion that where an officer agrees to afford a person criminally inclined protection from arrest and prosecution for the commission of crime, such officer is as much an actor in the commission of such crime physically committed by the person to whom the protection is afforded as one who aids by standing guard while another person physically commits a crime. Billingsley v. U. S. (C. C. A. 8) 16 F.(2d) 754; Allen v. U. S. (C. C. A. 7) 4 F.(2d) 688, 692; Jezewski v. U. S. (C. C. A. 6) 13 F.(2d) 599, 601, 602. There can be no doubt that the first payment of $10 made by Jimerson and received by Cox and Cook induced Jimerson to believe that he was being afforded protection and induced him to violate the National Prohibition Act by selling whisky, and in this way tended to effect the unlawful object of the conspiracy. We conclude that the indictment sufficiently charged an overt act.

■ On redirect examination, Aubrey was permitted to testify over objection of counsel for defendant Cook that in December, 1924, he received a still from Cook and manufactured whisky therewith. Counsel for Cook contend that the court erred in admitting this testimony. The contention of counsel would be well taken but for the fact that they originally elicited testimony relative to this transaction in their cross-examination of the witness Aubrey.

■ Counsel for Cook further contend that the court erred in giving the following instruction to the jury: "The Court: Well, of course, gentlemen, I permitted the witness Aubrey to testify to some transactions or arrangements he had as to the manufacture or sale of liquor. Of course the defendant is not charged with that transaction in this indictment. Such evidence though of similar character as to that charged in the indictment may be considered by the jury solely for the purpose of determining whether or not they are convinced beyond a reasonable doubt that such a conspiracy existed as charged in the indictment. It is only competent to be considered in connection with all the other evidence, as to whether or not a charge as that contained in the indictment is sustained by the evidence beyond a reasonable doubt." This instruction had reference to the testimony of the witness Aubrey relative to other crimes committed by the defendant Cook. As a general rule, evidence of other crimes is inadmissible, but to this rule there are certain well-recognized exceptions. It does not apply where the evidence of another crime tends directly to prove the crime charged, and evidence which is relevant to defendant's guilt is not rendered inadmissible because it proves or tends to prove him guilty of another separate and distinct crime. It often happens that two distinct offenses are so inseparably connected as in the instant case that the proof of one necessarily involves proof of the other, and in such case on the prosecution for one, evidence proving it should not be excluded because it also proves the other. Astwood v. U. S. (C. C. A. 8) 1 F.(2d) 639, 642. The other and distinct offenses testified to by Aubrey were so related to the main issue in respect to time and character as to aid in its solution, and such testimony for that reason was admissible. Cook v. U. S. (C. C. A. 8) 14 F.(2d) 833. While the instruction complained of was perhaps inartificially worded, we do not think under the circumstances it constituted prejudicial error requiring reversal.

The judgment is affirmed.