## SCHNEIDER et al. v. UNITED STATES.
### No. 4466.

Circuit Court of Appeals, Third Circuit.

March 16, 1932.

Rehearing Denied April 21, 1932.

Frederic M. P. Pearse and Louis Fast, both of Newark, N. J., for appellants.

Douglas M. Hicks, of New Brunswick, N. J., Phillip Forman, U. S. Atty., of Trenton, N. J., and John Grimshaw, Jr., Asst. U. S. Atty., of Paterson, N. J., for the United States.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

The appellants were tried and convicted upon an indictment charging a conspiracy to commit the following offenses in violation of the internal revenue laws:

(1) Having possession, custody, and control of stills, and neglecting to register them with the collector of internal revenue or the Prohibition Administrator for the proper district.

(2) Engaging in and carrying on the business of distillers and making and distilling spirits subject to tax imposed by the revenue laws with intent to defraud the United States of the tax.

(3) Conducting and carrying on the business of distillers without having given bond.

(4) Working in distilleries at places upon which no sign bearing the words "Registered Distillery" was placed as required by law.

(5) Making and fermenting mash fit for distillation in buildings not distilleries authorized by law.

The conspiracy was charged to have been carried on during the period between January 1, 1927, and the date of filing the indictment, August 21, 1929. The overt acts set out charged:

(1) That in February, 1928, the defendants met at St. Petersburg, Fla., one David Kaufman and negotiated with him for the lease of a building known as the Biondi factory at Cliffwood, N. J., and paid Kaufman $400 on account of rent.

(2) That in November, 1928, at Cliffwood, N. J., the defendants had in their possession and under their control at the Biondi factory two stills with attachments designed for the unlawful production of distilled spirits for beverage and commercial purposes.

(3) That in May, 1927, at Newark, N. J., the defendants purchased from one Benjamin Handsman the premises at 42 North Bath avenue, Long Branch, N. J., to be deeded in the name of Joseph Binder as grantee. (As to this overt act, no proof was offered.)

(4) That on or about January 1, 1928, at 42 North Bath avenue, Long Branch, N. J., the defendants had in their possession a 350-gallon capacity still and a 1,000-gallon still set up, designed, and intended for unlawful production of spirituous liquor for beverage and commercial purposes, and not registered as required by law.

(5) That on or about May 20, 1927, at Long Branch, New Jersey, two of the defendants rented and hired a building.

(6) That on or about June 1, 1927, at Long Branch, N. J., in a building rented of one Joseph Hornung, two of the defendants had in their possession two 500-gallon stills set up, designed, and intended for the unlawful production of spirituous liquors for beverage and commercial purposes.

(7) That on or about October 1, 1928, at Shrewsbury, N. J., the defendants with others, in a brick building, had in their possession three 3,000-gallon stills intended for the unlawful production of spirituous liquors for beverage and commercial purposes.

(8) That on or about March 1, 1927, at Long Branch, N. J., the defendants and others, at a building 422 Sairs avenue, had in their possession one 800-gallon capacity still and one 350-gallon capacity still set up, designed, and intended by them for unlawful production of spirituous liquors for beverage and commercial purposes.

The defendants seasonably moved to quash the indictment and upon conclusion of the government's case moved for a directed verdict. Both motions were denied.

It is contended for the appellants that the allegations of overt acts (2), (4), (6), (7), and (8) do not set forth acts sustaining a conspiracy, since each of the charges constitute mere passive possession of premises and stills. We cannot sustain that contention. Congress has made the possession of stills, of intoxicating liquor, and of utensils for making intoxicating liquor, crimes. 41 Stat. 308 (27 USCA § 12). The charge of what Congress has declared to be a crime is suffi-

cient to constitute an overt act. It has been so held as to possession of intoxicating liquor. Liberato v. United States, 13 F.(2d) 564 (C. C. A. 9). The receipt of a bribe has been held to be a sufficient overt act to sustain an indictment for a conspiracy to violate the National Prohibition Act. Cook v. United States, 28 F.(2d) 730 (C. C. A. 8). We conclude that unlawful possession is such an act as may be shown in carrying into effect the conspiracy charged, and that the court was not in error in allowing the evidence of possession to go to the jury.

▮ Appellants contend that the first count in the indictment, which charges the defendants with conspiring to have in their possession and custody certain stills, and failing to register them with the collector of internal revenue or with the Prohibition Administrator, does not charge a crime. The act requiring registry of stills and apparatus with the collector of internal revenue, Rev. St. § 3258, 26 USCA § 281, was repealed by the National Prohibition Act, 27 USCA § 1 et seq. (United States v. Stafoff, 260 U. S. 477, 43 S. Ct. 197, 67 L. Ed. 358), but was re-enacted by the Act of November 23, 1921, 42 Stat. 223, § 5 (27 USCA § 3), which continued in force all laws in regard to the manufacture, taxation of, and traffic in intoxicating liquor, and all penalties for violation of such laws that were in force on October 28, 1919. The Act of March 3, 1927, § 4, 44 Stat. 1382 (5 USCA § 281c), authorized the Secretary of the Treasury to designate the official with whom the registration should be made and to transfer from the Commissioner of Internal Revenue to the Commissioner of Prohibition or his subordinates all the duties of the former in regard to intoxicating liquors.

It is asserted by the appellants that the delegation was not made by the Secretary of Treasury until October 1, 1927, Regulation No. 3, article 18. The point made is that, inasmuch as there was a hiatus in the period from March 3 to October 1, 1927, during which there was no requirement to register with the collector of internal revenue or with the Prohibition Administrator, the entire count must fall.

The gist of the offense charged in the first count is a conspiracy to have possession of stills without registering during the period between January 1, 1927, and August 21, 1929, the date of filing the indictment. Assuming that it is a fact, as set out in the appellants' brief, that there was a hiatus within the period covered by the indictment during which registration was impossible, it was still open for the District Attorney to show that at times during the period covered, when registration was required by law, the defendants failed and neglected to register, as the case might require. The point raised by the appellants is therefore not sustained.

▮ There was sufficient evidence to go to the jury to support the charges in the indictment of possession of stills both prior to and after October 1, 1927. The testimony that the stills were not registered during any period in which registration was required was sufficient to establish the failure to register as a purpose of the conspiracy. The evidence concerning the Biondi factory referred to acts beginning in February, 1928; that concerning the stills set up at 42 North Bath avenue, Long Branch, N. J., to acts on and after January 1, 1928; and that concerning the stills at Shrewsbury, N. J., to acts in October, 1928. That evidence was sufficient to sustain the charge and to be submitted to the jury.

▮ The defendants requested the trial judge to charge the jury as follows, concerning the testimony of the government's principal witness, one David Smith:

"The jury are instructed in weighing the evidence of David Smith, who is testifying for the government, you should have due regard to the fact that he is a self-confessed violator of the law and admits committing perjury, and that he has not been indicted, and taking these things into consideration you will give to his testimony such weight and credit as you think it is entitled to receive. You will scrutinize his testimony more closely than you would the testimony of a witness against whom no such cloud rests. You are directed to weigh carefully his testimony, and cautioned against placing too firm a reliance upon it unless the same shall be corroborated by the testimony of credible witnesses or by other facts and circumstances that verify his testimony in all material particulars. * * *

"Having admitted that he committed perjury in another Court of Justice with respect to the same transactions concerning which he has testified in this court, you may disregard all of his testimony under the legal maxim 'False in one, false in all.'"

The court charged the jury in accordance with all of that request except the last para-

graph, which he refused, to which action exception was taken and error assigned. It had been admitted by the witness that at a hearing in the Court of Chancery of New Jersey he had testified to certain facts which, at the trial of the case before us for review, he admitted were untrue. If the court had charged as requested, the effect would have been to withdraw from the jury all of the testimony of this witness. We think the effect of an admission of having testified in another suit to the contrary of the witness's testimony in the suit on trial, is for the jury under proper instructions.

In the case of the Santissima Trinidad, 7 Wheat. 283, 339, 5 L. Ed. 454, Mr. Justice Story said: "But where the party speaks to a fact in respect to which he cannot be presumed liable to mistake, as in relation to the country of his birth, or his being in a vessel on a particular voyage, or living in a particular place, if the fact turn out otherwise, it is extremely difficult to exempt him from the charge of deliberate falsehood; and courts of justice, under such circumstances, are bound, upon principles of law, and morality and justice, to apply the maxim falsus in uno, falsus in omnibus."

But this was said in discussing the weight of the evidence, and was not, as we take it, intended to lay down a positive rule of law, to be applied in all cases. Addis v. Rushmore, 74 N. J. Law, 649, 65 A. 1036. See Shecil v. United States, 226 F. 184, 187 (C. C. A. 7) where, in commenting on the maxim, Judge Mack said: "The maxim, 'Falsus in uno, falsus in omnibus,' as pointed out by Wigmore in his Evidence (volume 2, §§ 1008–1015), has to do solely with the weight, not with the admissibility, of the evidence. As the jury is the sole judge of the credibility of witnesses, any instruction in respect thereto is, at best, merely advisory. If the jury believe that a witness has willfully and knowingly given false testimony, they are no longer required, as a rule of law, to reject his entire testimony."

It was not for the court to instruct the jury to utterly disregard the witness's testimony. The trial judge, having properly instructed them as to their duty in considering the perjured witness's testimony, committed no error in refusing to charge in accordance with the concluding paragraph of the defendants' request.

We find no error sustaining any of the appellants' assignments.

The judgment is affirmed.