## NORFOLK & W. RY. CO. v. McKENZIE.
### No. 8383.

Circuit Court of Appeals, Sixth Circuit.

Jan. 8, 1941.

O. T. Hinton, of Pikeville, Ky. (O. T. Hinton, of Pikeville, Ky., W. W. Coxe, of Roanoke, Va., and S. T. Saunders, of Washington, D. C., on the brief), for appellant.

John W. McKenzie and R. C. Van Sant, both of Ashland, Ky. (Hannah, Van Sant & McKenzie, of Ashland Ky., on the brief), for appellee.

Before SIMONS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This is an appeal from a judgment pursuant to a jury verdict for Six Thousand ($6,000.00) Dollars in favor of appellee for personal injuries. The single question is whether there was substantial evidence to support the verdict.

Appellant maintains and operates a double track steam railroad which passes over United States Highway 52 at a point approximately five miles west of Ironton, Ohio. The underpass has an S-curve, with the tracks at an elevation of approximately twenty feet. The railroad over it is constructed of steel girders, running parallel with the tracks, with supporting cross steel girders underneath, overlaid with cross ties with open spaces of fourteen inches between the ends of the cross ties and the outside girder of the west-bound track.

On the morning of September 8th about 2:30 o'clock a. m., one of appellant's freight trains, consisting of 149 gondola cars of coal and two cars of stone passed over the underpass. With one exception, all of the cars containing the lump coal originated in Williamson, West Virginia, and had moved for more than 125 miles over tracks with sharp curves before it reached the underpass.

Appellee testified that while the train was passing over the underpass, he drove under it in an automobile and while so driving coal fell from the train into his car, one lump from eight to ten inches in diameter passing through the top making a hole approximately fourteen inches in diameter and striking him on the head and another lump about the size of a quart cup struck the windshield of the car, broke a hole in it and shattered on the floor of the automobile. He claimed he was seriously and permanently injured as a result of the blow. No one witnessed the accident. Appellee claims to have stopped his car within a few feet of the underpass and that he was unconscious for a brief period afterwards. Before reaching the overpass, the track of appellant was straight and level for a distance of half a mile, and from seventy-five to one hundred trucks loaded with coal and ranging in capacity from three to twelve tons traveled this highway daily.

Appellee's car was a 1935 model Ford sedan and the top through which the hole was made was of metal with the exception of the center panel, which was of synthetic leather stretched over a layer of composition fibre padding, one-quarter inch thick, supported by a one-inch mesh chicken wire, which in turn was supported by wooden horizontal braces, one inch thick and one and one-half inches wide, extending from one side of the panel to the other. No particles of coal were found on top of the car or on the fabric.

Shortly after the accident, a truck driver came upon the scene and at appellee's request called the State Highway Patrol of Portsmouth, Ohio, and a little later two other men operating a truck stopped at the underpass, examined the car, the coal on the highway and appellee's injury.

The first truck driver testified he was in a hurry and did not examine the scene of the accident but that appellee seemed to be injured. The drivers of the second truck who arrived about 3:00 o'clock a. m., found

appellee sitting on the running board of his car in a disheveled condition, with his face dirty and scratched and his right arm hanging limp. The car was approximately ten to fourteen feet from the railroad tracks. They examined it and found a large hole in the top and a small one of about one-sixteenth of an inch in the windshield, and coal was on both the back and front floors of the car and some on the highway.

A highway patrolman testified he arrived at the underpass at about 5:30 o'clock a. m. and found appellee in the car in a very nervous condition with the right side of his face skinned and that he was complaining about his shoulder. He corroborated the truck drivers as to the hole in the top and windshield of the car and said he offered to drive appellee to Ironton, but was advised by him that he thought he was able to drive the car that far and he did start it in that direction.

Appellee went to the hospital where he remained about a month. An examination by a doctor disclosed bruises on the right side of his face and head and bruises on his right shoulder and a highly nervous condition. Witnesses for appellant testified that at the time of the accident appellee was en route to Ashland which is about eighteen miles east of Ironton and that he drove through the underpass at least three times and that after being allegedly struck as he was emerging from under the trestle at a speed of from fifteen to twenty miles an hour, he veered to the left and stopped his car on the left side of the highway about fourteen feet from the trestle, where he remained for three or four hours, declining assistance from people passing, some of whom he hailed and called attention to the holes in the top and windshield of his car and that after the arrival of the highway patrolman about 5:30 o'clock a. m., he drove his car unassisted to Ironton. They also testified he had not been regularly employed for a considerable time prior to the accident and that a few weeks prior thereto he had for the first time in his life taken out an accident policy.

Immediately after filing of this action, appellant took appellee's deposition as on cross-examination, in which, on being asked as to his movements on the night of the accident, he said the reason he was alone in that neighborhood at 2:30 o'clock a. m. was because of an engagement to meet some friends at Ironton. On his refusal to disclose the names of his friends, motion to disclose their identity was made and sustained, and upon failure to comply with the order, appellant moved to dismiss. Later, both at the hearing on this motion and at the jury trial, appellee admitted his story was untrue, that he had perjured himself in the judicial proceeding, had falsified both to his own and appellant's attorney and in addition had persuaded a friend of his to go to see his attorney and falsely represent that he was one of those whom appellee was to meet at Ironton, the morning of the accident. After this admission and when giving a revised account of his movements on the day of the accident, he stated he had that day been to Cincinnati to see an Army Engineer whose office he said was in the Federal Building and whom he was told was out of town, but the receptionist in the office testified at the trial he was there that day and that his office was in the Enquirer Building on Vine Street and not in the Federal Building.

On this evidence, appellant insists its motion for a directed verdict should have been sustained on two grounds: (1) That appellant's statement that the coal fell from the train striking his car was insufficient to support his allegation of negligence; (2) That his admitted false swearing required the court to reject his testimony in its entirety.

■ While the general rule undoubtedly is that the burden of proof rests on the plaintiff to show that the injury resulted from negligence on the part of defendant, yet in some cases the very nature of the accident may of itself and through the presumption it carries, supply the requisite proof. Under such circumstances, the rule of res ipsa loquitur applies. The rationale of this doctrine is based upon the general consideration that where the management and control of the instrumentality which occasioned the injury are in the defendant, it is within defendant's power to produce evidence of the actual cause of the accident which plaintiff may be unable to produce. Its application presents principally the sufficiency or circumstantial evidence to establish or to justify the jury in inferring the existence of the traversible or principal fact in issue, the defendant's negligence. When a thing that causes injury is shown to be under the management of the defendant and the accident is such as in the ordinary course of things does not happen

if those who have the management use proper care it affords reasonable evidence in the absence of explanation by the defendant that the accident arose from want of care. Sweeney v. Erving, 228 U.S. 233, 240, 33 S.Ct. 416, 57 L.Ed. 815, Ann.Cas. 1914D, 905; Baltimore & Ohio Railroad Co. v. Kast, 6 Cir., 299 F. 419; Baltimore & Ohio Railroad Co. v. Flechtner, 6 Cir., 300 F. 318; Weller, Ex'r'x v. Worstall, 129 Ohio St. 596, 196 N.E. 637; Rayburn v. Pennsylvania Railroad Co., 6 Cir., 76 F.2d 505; Louisville & Nashville Railroad Co. v. McMillen, 142 Ky. 257, 134 S.W. 185; Louisville & Nashville Railroad Co. v. Clark, 106 S.W. 1184, 32 Ky.Law Rep. 736; Louisville & Nashville Railroad Co. v. Reynolds, 71 S.W. 516, 24 Ky.Law Rep. 1402.

■ If coal is properly loaded in gondola cars, there exists no reasonable probability of its falling off and if, after the cars are loaded and moving, the coal becomes displaced the duty is incumbent upon the carrier to exercise reasonable care to readjust the load so as to prevent its falling. It was the duty of appellant under the facts here to exercise reasonable care in the first instance in loading the coal and it was equally its duty to exercise reasonable care in seeing that its train was transported in such condition as to avoid all reasonable probability of injury to persons on underpass highways.

■ We are not impressed with the contention of appellant that the evidence here requires a finding that the accident could have happened from several causes for some of which appellant would not be liable. It may be that trespassers frequently ride freight trains and both intentionally and unintentionally throw coal from cars for fuel or other purposes or accidentally in walking over the tops of cars but, if trespassers were on the train in question, that fact should have been within the knowledge of appellant's employees on the train and was susceptible to proof by it. There is no evidence in the record that trespassers were riding the train in question. The evidence shows it had moved great distances without stopping and from this it may be inferred coal was not being moved from the cars by trespassers for fuel in the vicinity of the overpass. Appellee testified positively that the coal which struck his car came from the train. if his testimony is to be believed, this eliminates any inference that it came from trucks passing on the highway. If appellee's testimony was to be considered by the jury, appellant's negligence was also for the jury.

■ Appellee's testimony, taken as a whole, is a mixture of truth and falsehood and appellant urges that the principle of falsus in uno, falsus in omnibus, is applicable. However, this maxim is not an inflexible rule of evidence and its application is delegated to the jury under appropriate instructions. The rule is one of permission and not mandatory. The jury may disregard the evidence altogether and should do so if the witness has wilfully sworn falsely to a material fact in the case but they may not be required to do so by the court. The jury is the sole judge of the credibility of witnesses and any instruction thereon is merely advisory. There is no positive rule of law which excludes evidence from consideration entirely on account of the wilful falsehood of a witness as to some portion of his testimony. Such disregard of his oath is enough to justify the belief that the witness is capable of falsification on all matters about which he testifies but, once a witness is determined by the judge to be qualified to speak, the weight and credibility of every portion of his testimony is for the jury. Under our judicial system, the jury alone is charged with forming a conclusion as to the truth of the testimony offered. Mead et al. v. McGraw, 19 Ohio St. 55; Letton v. Young, 2 Metc. 558, 59 Ky. 558; Shecil v. United States, 7 Cir., 226 F. 184; Schneider v. United States, 3 Cir., 57 F.2d 454, 455; Wellman v. United States, 6 Cir., 297 F. 925.

■ The law which vests the power of review in this court on appeal from the verdict of a jury does not contemplate the substitution of facts, which may be drawn from the evidence by three judges for the findings of fact which have been drawn from the evidence by twelve jurors.

If we were the triers of the facts, appellee's testimony might be rejected but, in our opinion, its weight and credibility was for the jury.

Judgment affirmed.