## UNITED STATES v. GREENSTEIN.
### No. 170.

Circuit Court of Appeals, Second Circuit.

Jan. 28, 1946.

Jacob Friedman, of New York City, for appellant.

Mario Pittoni and T. Vincent Quinn, U. S. Atty., both of Brooklyn, N. Y. (Vine H. Smith, Asst. U. S. Atty., of Brooklyn, N. Y., of counsel), for appellee.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

L. HAND, Circuit Judge.

Greenstein, a bankrupt, appeals from a conviction upon two indictments; one, for making a false oath in bankruptcy; the other, for concealing assets from his trustee. He raises three points: (1) That the evidence did not support the verdict; (2) that the court had no jurisdiction over the indictment for concealing assets; (3) that the judge refused to strike out the testimony of a witness for the prosecution because of its uncertainty and vagueness. The facts were as follows. Greenstein filed a voluntary petition in bankruptcy in Brooklyn on November 12, 1940, in which he declared in his schedules, and in his "Statement of Affairs" that he had no assets, but liabilities of over $22,000. Upon his examination he denied that he was the owner of two hat businesses; the Alba Hat Company, Inc., and the Emerald Hat Co., Inc., both of which did business in Manhattan. We shall confine our discussion to the first of these businesses, for the evidence as to it alone amply sustained the verdict.

The Alba Hat Company, Inc., was a corporation organized on August 30, 1939, as successor to an earlier hat business on the same premises, known as the Alba Hat Company. On February 15, 1938, one Harold Greenstein, a son of the accused, then about 21 years old, had filed in the N. Y. County Clerk's Office a certificate that he was doing business under that name; but the certificate was endorsed, "filed by Harry Greenstein." In August of 1939, Greenstein approached a factor of accounts, named Luft, and asked him for a loan for the Alba Hat Company. Luft lent him $400; but when Greenstein called again a few weeks later for another loan, Luft told him that the business must be incorporated (apparently to avoid the usury laws). After that had been done Luft made two more loans, both through Greenstein with whom alone he had dealing at any time. At the first interview Greenstein said that the business was his, but that he was conducting it in another name. In November, 1939, Greenstein signed a lease of the premises on which the business was being conducted; in April, 1940, he told one, Cohen, that he owned the business; and in June of that year he said to an insurance adjuster that he owned the business, but he was conducting it in his son's name because he had been in bankruptcy. To an accountant, named Fahr, either Stanley Greenstein or the accused—both being present—said that the corporation was taking over a business which had been carried on either by Greenstein, or by Greenstein with his two sons. The company had a capital of $7,000; but the only certificate ever issued was dated August 26, 1939, and was made out in the name of a single shareholder, Greenstein's daughter-in-law. The manager of the company which had sold the stockbook testified that it had not been purchased until November 16, 1940, over fourteen months after the certificate bore date,

and even a few days after the petition in bankruptcy had been filed. Finally, Greenstein upon several occasions gave conflicting versions of who was the owner of the business.

It is not necessary to go further; the testimony, if believed, presented an altogether familiar type of fraudulent bankruptcy whose existence was finally to be determined by the jury. There is no standard to which the evidence in a criminal case must conform, different from that which will support a civil verdict. The jury must of course be more completely sure of their conclusion, and must be advised that they should not find a verdict if there remains any fair doubt in their minds. But that is the only difference; courts will not try to measure the cogency of the evidence, or to draw a line between what should satisfy a reasonable man, and what should satisfy him beyond a reasonable doubt. The difference begins and ends with the admonition to the jury. We discussed the question and collected the authorities in United States v. Valenti, 2 Cir., 134 F.2d 362, 364; and in United States v. Feinberg, 2 Cir., 140 F.2d 592, and we have several times since repeated the ruling. United States v. Andolschek, 2 Cir., 142 F.2d 503; United States v. Cohen, 2 Cir., 145 F.2d 82, 84; United States v. Picarelli, 2 Cir., 148 F.2d 997.

 The next point is the refusal of the judge to dismiss the indictment for concealing assets on the ground that the assets were all in the Southern District of New York. Strictly, it is not necessary to pass upon the point, for the sentence upon the indictment for concealment was concurrent with that upon the indictment for perjury. However, we regard it as not well taken in any event, for we have nothing to add to Judge Goodrich's discussion in United States v. Schireson, 3 Cir., 116 F.2d 881, 132 A.L.R. 1157. See also Coghlan v. United States, 8 Cir., 147 F.2d 233, 237.

The last point is the judge's refusal to strike out the testimony of Fahr, the accountant, on the ground that it was too vague and too unreliable to be submitted to the jury at all. It is true that on cross-examination Fahr testified that he had been mistaken on his direct, when he said that Greenstein had said that the business had been his before the incorporation; and that the more correct statement was that it had been conducted by him with his sons. Fahr was also not sure whether this declaration came from Greenstein personally, or from Stanley, though both were present. Any doubts which might arise from this uncertainty and this contradiction were for the jury alone; they were not a ground for withdrawing the testimony from their consideration. Shecil v. United States, 7 Cir., 226 F. 184, 185, 187; Ramos v. United States, 1 Cir., 12 F.2d 761, 763; Schneider v. United States, 3 Cir., 57 F.2d 454, 457; Norfolk & Western R. Co. v. McKenzie, 6 Cir., 116 F.2d 632, 635.

Conviction affirmed.