**KOWALCHUK v. UNITED STATES.**

No. 10514.

United States Court of Appeals
Sixth Circuit.

Sept. 16, 1949.

874

William G. Comb, Detroit, Mich, (William G. Comb, Detroit, Mich., on the brief), for appellant.

Vincent Fordell, Detroit, Mich. (Edward T. Kane, Joseph C. Murphy, and Vincent Fordell, Detroit, Mich., on the brief), for appellee.

Before SIMONS, MARTIN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellant, John Kowalchuk, appeals from a judgment of conviction under an indictment consisting of two counts, charging violations of the National Stolen Property Act. 18 U.S.C.A. § 413 et seq. [now § 2311 et seq.]. Following a verdict of guilty, he received a sentence of 10 years and a fine of $10,000 on Count 1, and 10 years on Count 2 to run concurrently with the sentence under Count 1.

The statute involved on this appeal is 18 U.S.C.A. § 415 [now § 2314] which provides—"Whoever shall transport or cause to be transported in interstate or foreign commerce any goods, wares, or merchandise, securities, or money, of the value of $5,000 or more theretofore stolen, feloniously converted, or taken feloniously by fraud or with intent to steal or purloin, knowing the same to have been so stolen, feloniously converted, or taken * * * shall be punished by fine of not more than $10,000 or by imprisonment for not more than ten years, or both: * * *." Appellant's chief complaint is that the trial court erred in refusing to sustain his motion for judgment of acquittal at the conclusion of the Government's case in that the evidence was insufficient to establish the jurisdictional value of $5,000 under either count. Complaint is also made of the admission of incompetent evidence, prejudicial remarks made by the District Attorney during the trial and during his argument to the jury and the Court's instructions to the jury.

The indictment charged two interstate shipments from Detroit to New York City,

one on April 20, 1940 and the other on August 30, 1941, of automotive parts and accessories stolen from the Ford Motor Car Company. The appellant was doing business in Detroit under the name of John's Used Auto Parts. The principal witness for the Government was Morris J. Glyder, who was jointly indicted with the appellant and had previously entered a plea of guilty to the indictment. Glyder testified that in April 1940 he bought from the appellant in Detroit 400 carburetors at $1.50 each and 300 distributors at $2.50 each, for a total of $1,350, which articles were new and genuine Ford parts and packed in original Ford cartons; that on April 20, 1940, he shipped the articles to himself in New York City through the Erie Freight Lines; that the shipment consisted of 24 cartons which were transported from Kowalchuk's place of business to the Erie Freight Lines in his own car and in the car of appellant; that he paid cash for the property because it was "hot" or stolen property; that he knew they were stolen Ford parts and they were shipped by him as stolen merchandise; that the appellant did not render him a bill for the purchases but that he made out a memorandum of the transaction for his own purposes. This memorandum in Glyder's handwriting was introduced as Government's Exhibit 8a. The original freight bill of the Erie Freight Lines showing a shipment of 21 cartons and 3 boxes was introduced as Government's Exhibit 8b. The freight bill of the Erie Freight Lines, carrying a notation of payment in Glyder's handwriting on April 24, 1940, was introduced as Government's Exhibit 8c. He also testified that on August 29, 1941 he purchased from the appellant 600 voltage regulators at $1.50 each, 156 universal joints at 80 cents each, and 396 wipers at $1.00 each, for a total of $1,420.80, which were shipped from Detroit to New York City over Kramer Bros. Freight Lines on August 30, 1941; that he paid appellant cash for the purchases without receiving any discount for cash; that when he arrived in New York City he typed an invoice on a billhead of John's Used Auto Parts dated August 29, 1941 showing the articles purchased and the prices paid. The

invoice was introduced in evidence as Government's Exhibit 9a. It carried a notation "Paid cash, John Kowalchuk," but not in appellant's handwriting. The bill of lading issued by Kramer Bros. Freight Lines, dated August 30, 1941, showing a shipment of 43 cartons of auto parts to Glyder in New York City, was introduced in evidence as Government's Exhibit 9b. Glyder also testified to numerous other purchases of Ford parts from the appellant during 1940 and 1941; that he discussed with the appellant the fact that the merchandise was being stolen from the Ford Motor Company; that during 1941 he paid to the appellant about $30,000 in payment for genuine and new Ford parts; that he was buying them at the rate of about 20% to 25% of the list price; that he would make a memorandum of the merchandise purchased and give it to his daughter when he reached New York; that his daughter would then make the entries in his books; that his files and records had been taken by the FBI in December of 1941, and that he had not seen them during a period of over six years. It was brought out on cross examination that when he was in Detroit he would rent an automobile and go around to various people, specifically named in his testimony, from whom he would buy stolen Ford parts and deliver them to a freight company for shipment.

Lyman E. De Forest of the Ford Motor Company testified that neither the appellant nor John's Used Auto Parts was an authorized Ford dealer during 1940 and 1941.

Fred A. Fisher, who had many years of experience with Ford agencies, testified to the retail or market price of Ford parts in 1940 and 1941. His testimony was that as of April 20, 1940 the retail or market price of carburetors for the current model 85 was $8.00 per unit, of distributors $9.25; that as of August, 29, 1941, the price of voltage regulators was $5.75, of universal joints $2.95, and windshield wiper motors $6.75. On cross examination he stated that there were different types of carburetors, universal joints, and wiper motors with some variation in prices, but referring specially to the carburetors he stated they were

876

all Ford carburetors made up to Ford specifications regardless of the particular manufacturer. William H. Kay, who was in the parts and service department of the Ford Motor Company from 1933 to 1942, filed various price lists of the Company covering the periods in question and testified that parts made for the Ford Company by manufacturers were made to certain specifications from a Ford print.

Following the completion of the Government's case, the appellant unsuccessfully moved for a judgment of acquittal and then submitted the case to the jury without introducing witnesses in his own behalf.

■ Using the retail prices testified to, the value of the shipment of April 20, 1940 was $5,975, while the value of the shipment of August 30, 1941 was $6,583. The retail or market value was properly used by the District Judge. Gordon v. United States, 6 Cir., 164 F.2d 855, 859; Husten v. United States, 8 Cir., 95 F.2d 168, 171. Appellant contends that these valuations establishing the $5,000 jurisdictional amount were destroyed by other contradictory testimony given by the witness Glyder. Glyder testified that the distributors purchased from the appellant and shipped on April 20, 1940 were packed 12 in a container, and were shipped in the original cartons. On cross examination he changed this to 6. He testified that the carburetors were packed 10 and sometimes 12 in a carton. Since the bill of lading showed that only 21 cartons and 3 boxes were contained in the shipment, there were not enough distributors and carburetors to bring the value of the shipment to the required $5,000. With respect to the shipment of August 30, 1941, Glyder testified that the voltage regulators were packed 24 to a heavy corrugated carton; that the universal joints and wipers were shipped in wooden boxes and not in cartons; and that it was required in making out the bill of lading that cartons and wooden boxes be differentiated and specifically enumerated. Accordingly, the 600 voltage regulators were contained in 25 of the 43 cartons shown by the bill of lading. Since there was no testimony showing the contents of the remaining 18 cartons in that shipment,

appellant contends that the proved value of the shipment of August 30, 1941 was much less than the required minimum of $5,000. If the jury relied upon that portion of Glyder's testimony, coupled with the bills of lading, appellant's contention would have merit. But Glyder also testified to facts, which, if coupled with Government Exhibits 8a and 9a and believed by the jury, would sustain the jury's finding that the value of each shipment exceeded $5,000. The contradiction in the testimony of this witness did not destroy his entire testimony or cause it to be taken from the consideration of the jury. It was for the jury to determine whether they believed the witness in whole or in part, and in the case of contradictory testimony to accept that portion which it considered worthy of belief and reject the remainder. United States v. Reginelli, 3 Cir., 133 F.2d 595, 598; United States v. Greenstein, 2 Cir., 153 F.2d 550; Ramos v. United States, 1 Cir., 12 F.2d 761, 763; Norfolk & W. Ry. Co. v. McKenzie, 6 Cir., 116 F.2d 632, 635. On appellant's motion for a directed verdict the trial court was required to consider the evidence most favorable to the Government. Garber v. United States, 6 Cir., 145 F.2d 966, 969. On appeal from a conviction, this Court views the evidence most favorable to the Government for the purpose of determining whether the jury's finding was supported by substantial and competent evidence. Battjes v. United States, 6 Cir., 172 F.2d 1, 5. We are of the opinion that the evidence was sufficient on the issue of value.

■ The District Judge declined to give appellant's requested instructions Nos. 16 and 17. These were to the effect that if the jury found that the Government refused to produce in evidence Glyder's books, which were in the Government's possession, it could consider such action as bearing upon the good faith of the prosecution, and that the failure of the Government to produce Glyder's books raised the inference that if they were produced the books would be unfavorable to the Government's claim. On the contrary, he instructed the jury that the Government had produced primary evidence concerning the two

shipments, that if appellant had wanted the books in evidence he could have requested the Court to bring them in, and that no inference was to be drawn from the fact that the books were not offered in evidence. The general rule is that failure to produce available evidence which would help decide the issue raises the inference that such evidence would be unfavorable to that party if produced. Morei v. United States, 6 Cir., 127 F.2d 827; United States v. Walker Co., 3 Cir., 152 F.2d 612, 613; Wigmore on evidence, 3d Ed. Vol. 2, § 285. But as pointed out in § 291 of the same work, if a refusal to produce evidence is the fact relied upon, it is at least necessary that a demand for the production of the evidence should have been made. In the present case, Glyder's books were apparently available to appellant upon motion that they be produced. Such motion was not made. The government introduced in evidence the memoranda made by Glyder at the time when the transactions occurred. This constituted primary evidence on the issue involved. It was not necessary for the Government to also offer evidence of a secondary and cumulative nature. Fielding v. United States, 6 Cir., 164 F.2d 1022; Morton v. United States, 79 U.S.App.D.C. 329, 147 F.2d 28, certiorari denied 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428; O'Leary v. United States, 9 Cir., 160 F.2d 333. Under the circumstances the requested instructions were properly refused.

 The appellant complains of prejudicial remarks made by Government counsel during the trial and in his closing argument to the jury. The Trial Judge sustained the appellant's objections to counsel's remarks made during the trial and directed the jury to disregard them. Under the general rule such remarks are not grounds for reversal. Robilio v. United States, 6 Cir., 291 F. 975, 986. No objection was made to the remarks of Government's counsel made during the closing argument. This Court can nevertheless consider a plain and palpable error, even though not objected to. Kaufman v. United States, 6 Cir., 163 F.2d 404. Government counsel referred to the defendant as "This temple of civic virtue" and "this hu-

man vulture." Appellant's counsel apparently did not consider the remarks prejudicial at the time they were made, and the Trial Judge was not afforded an opportunity to protect the appellant in this respect. Although severely critical of the appellant, we do not regard them as of such a character as to deprive the appellant of a fair trial. United States v. Goodman, 7 Cir., 110 F.2d 390, 394; Remus v. United States, 6 Cir., 291 F. 501, 511, certiorari denied 263 U.S. 717, 44 S.Ct. 180, 68 L.Ed. 522; Di Carlo v. United States, 2 Cir., 6 F.2d 364, 368, certiorari denied 268 U.S. 706, 45 S. Ct. 640, 69 L.Ed. 1168; Stassi v. United States, 8 Cir., 50 F.2d 526, 532.

 Complaint is made of the statement of the trial judge, made during his charge to the jury, to the effect that he was handicapped in attempting to put both sides of the case to the jury because the testimony was all by the prosecution "except as I can glean it from the questions that have been raised by the defendant's counsel and the objections and arguments made by the defendant's counsel." Appellant contends that this was an improper comment by the Court on the failure of the appellant to testify. We do not think so. The instructions must be considered in their entirety. Another portion of the charge specifically stated to the jury that the appellant's failure to testify did not create any presumption against him. The trial court may properly call attention to the failure of a defendant to testify, in connection with an instruction that the fact that he has not so testified is not to be considered against him. Robilio v. United States, supra, 6 Cir., 291 F. 975, 986.

 The trial judge permitted several present and former Ford employees to testify about their thefts of automobile parts from the Ford Company and their dealings with the appellant in connection therewith. Many of the automobile parts so stolen were not such parts as were contained in the shipments of April 20, 1940 and August 30, 1941, nor did the evidence show that the parts so stolen and sold to the appellant were ever shipped in interstate commerce. Appellant contends that

such evidence was improperly admitted relying upon the general rule that evidence of a crime wholly separate, independent, and without any relation to the one charged in the indictment, is not admissible. Boyd v. United States, 142 U.S. 450, 12 S.Ct. 292, 35 L.Ed. 1077. Appellant claims that the State offense of buying stolen property is entirely different from the Federal offense of shipping stolen goods in interstate commerce. The distinction is recognized. However, the rule relied upon has well-recognized exceptions. Where intent and knowledge are essential elements of the crime for which a defendant is being tried, evidence of other transactions, even though criminal in nature, is admissible if the transactions are so connected with the offense charged that they serve to show a general pattern and to prove the necessary criminal intent or guilty knowledge. Schmeller v. United States, 6 Cir., 143 F. 2d 544, 551; Richardson v. United States, 6 Cir., 150 F.2d 58, 63; Henderson v. United States, 9 Cir., 143 F.2d 681, 683. The District Judge carefully pointed out to the jury in his instructions that the appellant was charged with a Federal offense and not with a State offense, and that the evidence complained of could be considered only for the purpose of showing knowledge on the part of the appellant that the goods were being stolen from the Ford Motor Company, and to show intent on his part to commit the crime of which he was charged. The evidence was properly admitted when so qualified.

■ Complaint is also made of testimony by the witness Glyder relating to purchases by him of stolen automobile parts from persons in Detroit other than the appellant. The evidence was immaterial to the issue in the case. However, this evidence was not given by Glyder in his direct examination. This phase of Glyder's activities was first opened up by appellant's counsel on cross examination. A further and more complete development of the facts by the Government was not barred after appellant thus injected the issue into the case. Such testimony thereafter given on redirect examination was not improperly admitted. Cook v. United States,

8 Cir., 28 F.2d 730; United States v. Maggio, 3 Cir., 126 F.2d 155, 160, certiorari denied 316 U.S. 686, 62 S.Ct. 1275, 86 L. Ed. 1758. Glyder's further testimony, also on redirect examination, that at the time of his arrest in December 1941 the value of stolen merchandise in his possession was about $350,000 was a further development of this same issue.

■ We are of the opinion that the trial Court was in error in permitting William Mintz to testify, over objection of counsel for appellant, to incidents that occurred, one as early as 1934 or 1936, which involved the arrest of the appellant. The evidence was not material to the issue and under the general rule was inadmissible. Eley v. United States, 6 Cir., 117 F.2d 526, 528. But from an examination of the entire record we do not believe the error affected the substantial rights of the appellant. The record contains considerable testimony, properly admitted, of numerous transactions on the part of the appellant which were illegal under the State law and for which he was not being tried in this action. Appellant admitted his participation in many such transactions to the witness Everson, Special Agent of the FBI. The jury well knew the character of the appellant in that respect, irrespective of the testimony of Mintz. The only substantial question of fact before the jury was the value of the two interstate shipments. The evidence complained of did not pertain to that issue in any way. In our opinion, the error did not affect the verdict and is not grounds for reversal. 28 U.S.C.A. § 391. [See Federal Rules of Criminal Procedure, Rule 52, 18 U.S.C.A.]. Banning v. United States, 6 Cir., 130 F.2d 330, 338, certiorari denied 317 U.S. 695, 63 S.Ct. 434, 87 L.Ed. 556; Gordon v. United States, 6 Cir., 164 F.2d 855, 858; United States v. Waldon, 7 Cir., 114 F.2d 982, 985.

■ Appellant complains of several statements of the District Judge in his charge to the jury. They were not objected to at the time. It is unnecessary to discuss them in detail. While certain portions of the charge might have been given in more satisfactory form, yet the Court's at-

tention was not directed to what is now complained of, and we are of the opinion that the instructions, considered as a whole, properly submitted the case to the jury. Boyd v. United States, 271 U.S. 104, 46 S.Ct. 442, 70 L.Ed. 857; Taylor v. United States, 9 Cir., 142 F.2d 808, 817.

The judgment is affirmed.