## GILBERT v. UNITED STATES.
### No. 13038.

United States Court of Appeals
Fifth Circuit.
May 29, 1950.

Stovall Lowrey, Clarksdale, Miss., for appellant.

Chester L. Sumners, U. S. Atty., Oxford, Miss., for appellee.

Before HOLMES, McCORD and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

Appellant, L. Q. Gilbert, was indicted for an alleged violation of Section 876 of Title 18, U.S.C.A., the indictment charging in substance that on April 11, 1949, he deposited in the mails and caused to be delivered by the Post Office Department to one Howard Gurney a letter containing a threat

to injure his reputation, with intent to extort money from him.[1]

On November 17, 1949, appellant was tried and convicted before a jury, and was thereafter sentenced to serve a two year term in the penitentiary. A motion for new trial was overruled.

The question confronting us on this appeal is whether there is substantial evidence in the record to support the verdict of the jury as to the guilt of appellant; or whether, as appellant contends, the evidence is wholly insufficient to sustain his conviction and sentence.

The material evidence reveals that on April 11, 1949, a letter was deposited in the post office at Clarksdale, Mississippi, and that it was delivered through the United States mail to Howard Gurney at the place where he worked in the same city. The letter charged Gurney with lewd and lascivious misconduct, and contained a threat to injure his reputation and expose him publicly unless he carried out certain instructions regarding the payment of money.[2]

Gurney testified that he received two unidentified telephone calls regarding the anonymous letter, one of which was received about two or three days before the letter was delivered, and the other on the day the letter arrived. He stated that in the second conversation the caller remarked, "this is Frank"; that although the voice of that party and that of appellant were somewhat similar, he was not sure whether they were the same. In any event, shortly after receiving the letter, Gurney took it to the police headquarters at Clarksdale, and turned it over to the Chief of Police. This officer ordered one of his detectives, Ben Keesee, to go to the place designated in the letter at the appointed hour on the night of the suggested delivery, and to wait there in hiding until whoever was attempting the extortion arrived. It was arranged that Gurney would drive in his car to the appointed place at that time with a dummy package, and that the Chief of Police would follow.

In accordance with the above arrangement, Keesee went to the designated rendezvous a few minutes before the appointed time for delivery of the money. He secreted himself in the weeds behind the

1. The indictment reads as follows: "On or about 11 April 1949, L. Q. Gilbert in Coahoma County, in the Northern District of Mississippi, with intent to extort money and other things of value from Howard Gurney, did knowingly deposit in the United States Post Office at Clarksdale, Mississippi, for delivery by the Post Office Department, and did cause to be delivered to Howard Gurney a communication, being a letter addressed to 'Mr. Howard Gurney, c/o Wason Nash Co., Clarksdale, Miss. Personal,' containing a threat to injure the reputation of the said Howard Gurney, and in violation of Section 876 of Title 18, United States Code."

2. The letter reads as follows:
"Mr. Gurney
    "We have been checking your movements for several months now and we are ready to collect from you, as we have from other *prominent* men which could not *afford* to have their rep. ruint. You have been keeping company with negro women you have made contact with these *race* women at 127—11th St. Cora Stantons. You were there last wk *Tuesday* in a new *Nash*. We know these negro women by *name*, we also know you want (*and did*) to go down on you. We know will ella

"Now we have two letters wrote on typewriter, in case you fail to cary out instructions we will send one to Mr Wason and one to your inlaws. they go more in detail facts—places, actions, carno's such as 28-031-P etc.

"Go to bank tuesday get 200/pp in 10 & 20 bills, tuesday nite at 830 drive across 10th st bridge, go slow at the south end of bridge throw it out as far as you can in front of the second bill board on the right side of the hi-way.

"Have it in a white paste board box with a wate so you can toss it. My partner stand's ready to mail those typed letters if you fail. We only collect once, there are plenty more. we get one by one

"Fail and we will see that you are ruint in this town."
                    "F"

On the reverse of the second page of the letter was written:

"You are our 15th in one year".

The envelope was small and white, with a 3¢ stamp attached. It was postmarked "Clarksdale, Miss., Apr 11, 1949, 12 M" and addressed to "Mr. Howard Gurney, c/o Wason Nash Co., Clarksdale, Miss." "Personal".

signboards about 8 o'clock in the evening. It was pitch dark and raining at the time he arrived. After he had been watching and waiting for approximately fifteen or twenty minutes, by means of the street lights and the lights from passing cars he was able to observe a man coming down the road in the direction of the signboards. He knew the defendant, but did not recognize him at that time because of the darkness. He watched him cross the Tenth Street Bridge, climb through a barbed wire fence along the side of the road, and go behind the signboards. There is a conflict in the testimony as to what happened thereafter, the defendant testifying that he went behind the signboard to "take a leak" while on his way home, and that Keesee arrested him as soon as he arrived. The officer, however, testified that he waited for several minutes after the defendant arrived upon the scene and hid himself behind the signboards; that he did not flash his light upon the defendant and arrest him until he came out from behind the signboards upon the arrival of Gurney in his automobile. By that time the Chief of Police had arrived, and the defendant was searched. According to the testimony of the officers, the search of defendant's person revealed that he was carrying some groceries, keys, a knife, some coins, and a small piece of cardboard in his pocket upon which was written some words of similar import to the language of the extortion letters, as follows: "fail to do this and we will ruin you in this town. You will not be bothered again. We have potential clientel that is sufficient at 200 per- Wed. night at 8:30 across tenth st. bridge".

The defendant testified in his own behalf and denied that he wrote or mailed the Gurney letter; denied that he ever called Gurney over the telephone; and stated that the piece of cardboard with the above writing on it was not taken from his pocket, but intimated that it was probably placed there by the police officer, Keesee, who he claims was prejudiced against him because of some trouble between their families. In explanation of his presence behind the signboard at the appointed hour, he offered testimony to the effect that between 6:30 and 7 o'clock on the evening of his arrest, he had taken a taxi out to a grocery store not far from the signboards to read some magazines, and talk to the proprietor; that after he had been there an hour or more he tried to get a taxi to take him home, but that due to the rain they were all busy, whereupon he decided to walk home; that around 8 o'clock or a little after he started walking away from the store and in the direction of the bridge and signboards, several hundred feet away; that upon approaching the signboards he felt the call of nature, and that he therefore climbed through the barbed wire fence in order to go behind the signboards and urinate; that as soon as he got behind the signboards, the officer Keesee apprehended him and kept him in custody at the point of a gun for several minutes until Gurney and the Chief of Police arrived. However, other Government testimony reveals that the defendant was the only person other than the police officers who showed up at the designated rendezvous at the time suggested in the extortion letter; that the defendant was unemployed at the time the letter was written and on the date of his arrest; that he did not travel by a direct route toward his home on the evening of his arrest, but traveled in almost the opposite direction, constantly moving toward the designated place for delivery of the money; and that, although in walking from the grocery store to the Tenth Street Bridge he had passed two filling stations, he then felt no desire to relieve himself, but found it necessary to turn off on a dark road and rainy night, and to crawl through a barbed wire fence and down a steep embankment, in order to arrive at the suggested place at almost the exact moment that one would have been there who had written and mailed the Gurney letter. Moreover, a search of the defendant's room after his arrest revealed that he possessed some envelopes purchased from a local ten cent store, of the same type as the envelope in which the extortion letter was mailed; and that he also kept a circular card in his room advertising for a fugitive whose first name was "Frank", the same name used by the party who had made the second call to Gurney concerning the extortion letter.

The evidence in this case points unerringly to the guilt of this defendant, and we are not warranted in overturning the verdict. Holmes v. United States, 8 Cir., 134 F.2d 125, 130; Kowalchuk v. United States, 6 Cir., 176 F.2d 873, 876; Jelaza v. United States, 4 Cir., 179 F.2d 202; see also, Franks v. United States, 8 Cir., 164 F.2d 795; Battjes v. United States, 6 Cir., 172 F.2d 1, 5.

The charge of the trial court was in all respects full and fair, and substantially preserved for the jury every issue in the case. Moreover, no objection was made to such charge by the Government or the defendant.

We do not consider or pass upon the question of whether appellant should be granted a new trial on the ground of the alleged newly discovered evidence. The motion to remand upon this ground is therefore overruled, without prejudice to the right of appellant to have his motion presenting this issue considered and passed upon by the district court within the time allowed.

We find no reversible error in the record, and the judgment is accordingly

Affirmed.