**HEALY v. PENNSYLVANIA R. CO.**

No. 10217.

United States Court of Appeals
Third Circuit.

Argued June 8, 1950.

Decided Sept. 11, 1950.

As Amended Oct. 10, 1950.

Philip Price, Philadelphia, Pa. (Harold P. Dicke, Barnes, Dechert, Price, Myers & Clark, Philadelphia, Pa., on the brief), for appellant.

Joseph Lord 3d, Philadelphia, Pa. (Elias Magil, and Richter, Lord & Farage, Philadelphia, Pa., on the brief), for appellee.

Before BIGGS, Chief Judge, and MARIS and KALODNER, Circuit Judges.

BIGGS, Chief Judge.

The plaintiff brought this suit pursuant to the Federal Employers' Liability Act, 45 U.S.C.A. §§ 51–60, to recover damages for the death of her husband, a 44 year old day laborer, who had been employed by the Pennsylvania Railroad for some time prior to the accident which resulted in his death. At the trial the jury found a verdict for the plaintiff and eventually final judgment was entered thereon.[1] The defendant has appealed.

Since the jury rendered a verdict for the plaintiff all inferences most favorable to her must be taken from the evidence. On December 4, 1944, shortly after 8 A.M.[2] an eastbound 70 car freight train, operated by the defendant, was approaching the station at Cresson, Pennsylvania, on Track No. 1, one of a number of tracks in the yard. The train had a leading engine and at least one pusher at the rear. The engineer of the leading engine testified that his cab windows were so frosted that it was necessary for him to lean out his window to see the track. The train was moving almost noiselessly at between five to eight miles an hour since the power of the leading engine had been shut off, the engineer having received a cab signal indicating that a stop was to be made at the MO block near or at the Cresson station. There was some fog. The engineer of the leading engine had the engine headlight on at dim. Visibility was limited to about ten car lengths or 400 feet. The track at the point where the accident occurred curves slightly to the East with a moderate upgrade. It is not clear from the testimony whether the engineer of the leading engine blew his whistle as he approached the station and the inference must be taken that he did not do so. He did ring the engine bell. The engineer testified that as the engine approached the station, but while it was as yet some distance from it, he saw a man in

1. In this connection, see the prior opinion of this court. 181 F.2d 934.

2. Sunrise on this day was at 8:05 A. M.

Eastern War Time. We entertain no doubt but that the time referred to in the testimony was Eastern War Time.

a yellow coat, similar to one worn by Healy, cross the tracks[3] on one of the boardwalk baggageways from the south to the north.

█ The fireman testified that he saw what he thought was a bundle of rags tumbling by the left No. 2 or No. 3 drive wheel of the engine; that he looked again, saw that it was a man and shouted, "Hold it. There is a man under the—[sic]. We hit a man." The fireman stated that Healy's body was "rolling" in the "six foot", a railroad term used to indicate the space between the rails of two tracks.[4] From the time when the fireman shouted until the train came to a stop, the engine moved approximately four car lengths or 160 feet. The engineer said that when the fireman shouted to him, he applied the brakes in a "service", not an "emergency", application and brought the train to a halt. Healy, shortly thereafter, was found dead along the tracks approximately at the point where the fireman first observed the "bundle of rags". The jury was entitled to infer that he had met his death because he had been struck by the engine.

█ Healy had been a member of a track gang which worked from Gallitzin to Duncansville. Mrs. Healy testified that when her husband left home on the day of the accident he told her that he was going to the war bond rally to be held at Cresson that morning and that he intended to find out why he had not received a war bond for which he had subscribed. A track foreman of another section gang, who drove to Cresson with Healy in a truck furnished by the railroad company, corroborated this statement. He said also that Healy told him that he was not feeling well. When Healy was about to get down from the truck which took him to Cresson he asked the foreman to help him down though the distance was only about three feet and

Healy, as we have said, was only 44 years of age. The company several days prior to the rally, had informed Healy and other employees, through one of its foremen, that those employees who attended the bond rally would be paid their wages whether they bought bonds or not. Payment for bonds was made under a payroll deduction plan operated by the company and the company delivered the bonds to its employees. There was evidence that when an employee subscribed for a bond which was not received by him, he complained to his foreman and the complaint was lodged with the supervisor. It is probable that at the time of the accident Healy was crossing the tracks by the boardwalk baggageway in order to find out from the company's supervisor at Cresson why the bond had not been delivered to him. The supervisor's office was on the far side of the right of way but he was not in his office at the time since he was conducting the bond rally at a hall in Cresson. The jury was entitled to infer that Healy was on his way to see the supervisor about this bond when he was struck by the engine.

█ The court below properly left to the jury the question of whether Healy was within the scope of his interstate employment when he was killed. The railroad company insists that he was on a private errand respecting a war bond and therefore was not entitled to a recovery under the Federal Employers' Liability Act. See 45 U.S.C.A. § 51. Many cases discuss the question of whether an individual employed in interstate commerce shall be deemed to be within the purview of the Act when he was not actually at work at the time he was killed. Erie R. Co. v. Winfield, 244 U.S. 170, 173, 37 S.Ct. 556, 61 L.Ed. 1057, Ann.Cas.1918B, 662; Virginian Ry. Co. v. Early, 4 Cir., 130 F.2d 548; Young v. New York, N. H. & H. R. Co., 2 Cir., 74 F.2d 251, and see Lukon v. Pennsylvania R. Co.,

---

3. It should be noted that the engineer testified that he saw this man, who may or may not have been Healy, *cross* the tracks. The engineer stated in this connection that " * * * he got clean over onto the station platform."

4. It should be noted that the "six foot" in this instance was not a space of six feet in width. There was an island formed by part of the station platform between tracks Nos. 1 and 2. The width of the space between the tracks in which Healy's body was found is not relevant, however.

3 Cir., 131 F.2d 327. We are of the opinion that when an interstate railroad instructs its employees by its foremen, acting under the direction of one of its supervisors, as to the time and place of a war bond rally to be conducted by the supervisor, supplies the transportation to the place of meeting, pays its employees during their attendance at the rally and also arranges for the purchase of the bonds under a payroll deduction plan and for the delivery of the bonds to its employees, it is proper to hold that the employees are acting within the scope of their employment on their way to the bond rally, at the bond rally and on their way from the bond rally. Under such circumstances the activities of the employees respecting the bond rally and the purchase of bonds were incidental to their employment.

 Healy did not attend the bond rally but went to see the supervisor who was the company representative from whom he could find out why a bond for which he had subscribed had not been delivered.[5] Healy had been brought to Cresson by his employer to attend the bond rally. The inquiry that he sought to make respecting a bond previously subscribed for could have had a direct bearing on his ability or willingness to subscribe for another bond on December 4. The purchase of bonds was incidental to Healy's employment and Healy's trip to see the supervisor was incidental to the purchase of bonds. We think that Healy's trip to see the supervisor was not so remote from his employment as to require the holding, sought by the railroad company, that Healy at the time of the accident was beyond the scope of his employment. The defendant itself had enlarged the ambit of the employment by its patriotic efforts to assist the United States to sell bonds to its employees. An analogy is supplied by Mostyn v. Delaware L. W.

R. Co., 2 Cir., 160 F.2d 15. See also Lukon v. Pennsylvania R. Co., supra.

 Our difficulty in sustaining the verdict in the instant case lies in the fact that there is no adequate proof of any negligence on the part of the defendant company which contributed to the accident. The bell of the leading engine was being rung as the train neared the Cresson station despite the fact that the boardwalk baggage way was not "a public crossing". See Rule 30 of the Rules of the railroad company.[6] The engine headlight was "at dim" as required by Rule 17 for the train was approaching a station and a train order signal. The only conceivable negligence on the part of the railroad lies in the fact, for we must assume it to be a fact, that the engineer did not sound his whistle as he saw a man, perhaps Healy, cross the tracks as required by Rule 14(p). At this point there occurs what the trial judge described in his charge as "an unfortunate hiatus" in the evidence and there is nothing to show why the accident occurred for though the engineer may have seen Healy cross the tracks he was not seen again until his body was rolling in the right of way on the left side of the locomotive at the No. 2 or No. 3 drive wheel. Healy may have been standing along the right of way so close to the engine that it struck him as it passed or he may have fallen against the moving locomotive. There is no evidence that he was on the No. 1 track when he received the injuries which caused his death. Why the accident happened lies in the field of speculation. There is nothing to demonstrate a causal connection between the failure of the engineer to sound the whistle and the happening of the accident or that that failure contributed "in whole or in part" to Healy's death. See 45 U.S.C.A. § 51. The plaintiff has not sustained the burden of proof.

5. The fact that Healy could not see the supervisor because the latter was at the bond rally, as Healy should have realized, is not material. The evidence suggests that Healy was perhaps possessed of somewhat less than normal apperception.

6. For this rule and the subsequent rules referred to see Rules of the Pennsylvania

Railroad, effective September 28, 1941 (1947 ed.).

We appreciate the fact that rules of a railroad company do not afford the final criterion of negligence and that they are not binding upon a court or jury. Nonetheless when, as in the instant case, rules are reasonable they are entitled to weight.

The Act does not make the railroad an insurer. Cf. the Lukon case, supra, where the jury was entitled to infer from the small pieces of coal in Lukon's cap that he had been struck by coal jolting from a coal car which had passed him, the coal having been improperly loaded therein. Cf. also Tiller v. Atlantic Coast Line Railroad Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610, 143 A.L.R. 967; Id., 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465; Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 63 S.Ct. 347, 87 L.Ed. 411; Bailey v. Central Vermont Ry., 319 U.S. 350, 63 S.Ct. 1062, 87 L.Ed. 1444, and Blair v. Baltimore & O. R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490.

The judgment of the court below will be reversed and the case will be remanded with the direction to enter judgment for the defendant pursuant to the motion made under Rule 50, Fed.Rules Civ.Proc., 28 U.S.C.A.

Biggs, Chief Judge, dissented in part and concurred in part.