## ATCHISON, T. & S. F. R. CO. v. WOTTLE.

### No. 4305.

United States Court of Appeals
Tenth Circuit.
Jan. 9, 1952.

---

Bratton, Circuit Judge, dissented.

E. C. Iden, Albuquerque, N. M. (R. S. Outlaw, Chicago, Ill. and B. G. Johnson, Albuquerque, N. M., on the brief), for appellant.

Francis T. O'Donnell, Gallup, N. M., for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

Invoking the provisions of the Federal Employers' Liability Act of April 22, 1908, as amended, 45 U.S.C.A. 51 et seq., Clementin Wottle, Administrator of the Estate of Edward Begay, deceased, instituted this action against the Atchison, Topeka and Santa Fe Railway Company, to recover damages for the injury and death of the deceased. It was alleged in the complaint that while the deceased was an employee of the Railway Company, and acting within the scope of his employment, he was negligently struck and killed by the defendant's train, and that such negligence on the part of the Company was the proximate cause of the injury and death. The Company denied that the deceased was acting within the scope of his employment at the time of the accident; denied any negligence on its part, and pleaded contributory negligence.

Upon a trial without a jury, the court found that at the time of the accident, the deceased was acting within the scope of his employment; that the Railway Company was guilty of primary negligence proximately causing the accident, and that the deceased was guilty of contributory negligence, to be considered in determining the amount of damages. The Railway Company appeals from a judgment against it in the sum of $7,200 based upon these findings.

The Employers' Liability Act, supra, makes a common carrier engaged in interstate commerce "liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *". Appellant concedes that it is a common carrier engaged in interstate commerce, and that as a section hand, the deceased was employed by it in such commerce. The narrow question is whether, at the time of the accident, he was still on duty.

The material facts bearing on that issue are not in dispute. The deceased was employed by the Company as a section hand at a place called South Garcia, located on the main line of the appellant Company in New Mexico. The Company maintained there a house for the section foreman and a bunk house for the section men, who provided their own food and bedding. There was no depot, railroad agent, residences or other buildings there. The deceased had been employed by the Company

as a section hand from time to time, but had started to work at this particular point on the day of the accident. After spending the night of March 6, 1950, in the bunk house, the deceased reported for work the next morning at the nearby tool house with the section gang. They were taken on a motor rail car to the point of work, and left in time to arrive back at the tool house at the end of the work day. After arriving at the tool house, the deceased was free to do as he pleased. He could go home, stay in the bunk house or "go hunting or sleeping". About an hour after quitting time, he and his bunk mate, Platero, left in an automobile owned by him, saying that they were going to Correo, located about twelve miles from there, to get some groceries, and to pick up Platero's bedding at a place called Suwanee, intending to bring the groceries and bedding back to the bunk house. In going from the bunk house to Correo and Suwanee, the usual route was to cross the railroad tracks at South Garcia. As the automobile started to cross the tracks, it was struck by a deisel engine pulling a passenger train, and the deceased and his companion were killed.

It is no longer doubted that the Employers' Liability Act extends to and covers not only the actual work performed in interstate commerce, but those acts which can be said to be necessarily incident thereto. Thus, an employee is working in commerce while going to and from his actual place of work after reporting for duty. Erie R. R. Co. v. Winfield, 244 U.S. 170, 37 S.Ct. 556, 61 L.Ed. 1057; Bountiful Brick Co. v. Giles, 276 U.S. 154, 48 S.Ct. 221, 72 L.Ed. 507; New York Central & Hudson River R. R. Co. v. Carr, 238 U.S. 260, 263, 35 S.Ct. 780, 59 L. Ed. 1298; Lukon v. Pa. R. Co., 3 Cir., 131 F.2d 327; Young v. New York, N. H. & H. R. Co., 2 Cir., 74 F.2d 251; Morris v. Pennsylvania R. Co., 2 Cir., 187 F.2d 837. And, the Act covers temporary departures from his line or course of duty, as where a fireman, after oiling, firing and preparing his engine for an interstate journey, temporarily left his engine to go to his nearby boarding house and was struck while on the railroad premises. North Carolina R. R. Co. v. Zachary, 232 U.S. 248, 34 S.Ct. 305, 58 L.Ed. 591. Or, where an employee temporarily leaves his actual work to inquire of his supervisor about a Government bond which he had purchased in accordance with a payroll deduction plan sponsored by the employer, and encouraged by bond rallies conducted on the employer's premises during work hours. Healy v. Pennsylvania R. Co., 3 Cir., 184 F.2d 209. See also Thompson v. Eargle, 4 Cir., 182 F.2d 717, 719.

But, given its most liberal interpretation, the Act cannot be extended to cover activities not necessarily incident to or an integral part of employment in interstate commerce. It obviously does not cover activities undertaken by an employee for a private purpose and having no causal relationship with his employment. Quirk v. New York C. &. St. L. R. Co., 7 Cir., 189 F.2d 97. The difficulty arises, as always, in drawing the dividing line in the twilight zone. Adjudicated cases are helpful only as factual analogies.

The case said to be most like ours, and upon which appellee relies, is Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F. 2d 15, 17, where a casual laborer on the railroad was provided bed and board in bunk cars located on the tracks in connection with his employment. After the day's work, he went to town, but returned to sleep in the bunk cars. Driven out of the bunk cars because of the verminous condition of the bedding furnished by the Company, he was injured while sleeping by the side of the tracks. Deciding its case squarely on the facts presented, the court reasoned that "when a railroad provides shelter or food or both for its employees, and they are using the accommodations so provided to prepare themselves for their work, or to rest and recuperate, they must be regarded as in its 'employ'"; and that inasmuch as he would have been covered while sleeping in a bunk house, he was likewise covered at the point where he had been driven in search of that which was provided. Applying that reasoning to our facts, it is argued that since, at the time of the accident the employee was in quest

of groceries to bring back to the bunk house, to be used to sustain him for his interstate employment, his activity was necessarily incident to and a part of such employment.

By this process of reasoning, the Act can be extended to cover all activities of an employee intended to sustain or prepare him for his interstate employment, regardless of time or place, or whether in pursuit of a benefit furnished by the employer or not. If we accept that conclusion, there is no limitation upon the coverage so long as there is a possibility that the employee will return to his work-a-day duties on the morrow. Obviously, the legislation was not intended to go so far. The Company furnished .the deceased a bunk for his bedding and a place to cook his food, but it furnished neither the bedding nor the food, and it was his sole responsibility to obtain it. When therefore, after his day's work, he set out in his own car to obtain groceries for himself, he was on a mission wholly unconnected and unrelated to his employment, and his injury while thus engaged cannot be said· to be in commerce within the meaning of the Act. Cf. Quirk v. New York C. & St. L. R. Co., supra.

The judgment is reversed.

BRATTON, Circuit Judge (dissenting).

The Federal Employers' Liability Act, as amended, 45 U.S.C.A. § 51 et seq., was designed to protect the rights of railroad and other employees; and with that legislative purpose in mind, it is to be liberally applied. Lukon v. Pennsylvania Railroad Co., 3 Cir., 131 F.2d 327.

In each case of this kind the question whether the action may be maintained under the Act must be decided in the light of the particular facts with a view of determining whether at the time of the injury or death, the employee was engaged in interstate commerce or in an act which was so directly connected with such commerce as substantially to form a part or a necessary incident thereof. If so, the action may be maintained under the Act. New York Central & Hudson River Railroad Co. v. Carr, 238 U.S. 260, 35 S.Ct. 780, 59 L.Ed. 1298.

The deceased was still on the premises of the company at the time of the fatal accident. He had not left the premises since concluding the day's work, and he intended to resume work the following morning. He was on the way to obtain groceries with which to sustain himself in order to continue his work for the company. And that was essential to the fulfilment of his employment. Viewed in the light of certain adjudications, some by the Supreme Court and others by Courts of Appeals, it seems reasonably clear to me that at the time of the accident the deceased was engaged in an act which constituted a necessary incident to his employment in commerce within the intent and meaning of the Act; and that, therefore, the action may be maintained under the Act. North Carolina Railroad Co. v. Zachary, 232 U.S. 248, 34 S. Ct. 305, 58 L.Ed. 591; New York Central & Hudson River Railroad Co. v. Carr, supra; Erie Railroad Co. v. Winfield, 244 U. S. 170, 37 S.Ct. 556, 61 L.Ed. 1057; Lukon v. Pennsylvania Railroad Co., supra; Mostyn v. Delaware, Lackawanna & Western Railroad Co., 2 Cir., 160 F.2d 15; Healy v. Pennsylvania Railroad Co., 3 Cir., 184 F.2d 209; Morris v. Pennsylvania Railroad Co., 2 Cir., 187 F.2d 837.