Jesse Q. **CASSO,**

v.

**PENNSYLVANIA RAILROAD COM-
PANY, a Corporation,**
Appellant.

No. 11428.

United States Court of Appeals,
Third Circuit.

Argued Jan. 7, 1955.

Decided Feb. 9, 1955.

Bruce R. Martin, Pittsburgh, Pa.
(Dalzell, Pringle, Bredin & Martin,
Pittsburgh, Pa., on the brief), for ap-
pellant.

John E. Evans, Jr., Pittsburgh, Pa. (Evans, Ivory & Evans, Pittsburgh, Pa., on the brief), for appellee.

Before MARIS, GOODRICH and STALEY, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a judgment for the plaintiff in a Federal Employers' Liability Act [1] case. Plaintiff was injured when he was run over by a train operated by the defendant on its property. He was a track employee returning at night to the bunk car which was supplied by the railroad for living quarters for its track workers. The verdict was for $72,000, and the judgment, upon plaintiff filing a remittitur for part of the amount, was entered in the district court for $53,000.

The employing railroad, appellant here, does not raise in this Court the question of whether the defendant was negligent or the plaintiff was contributorily negligent. Three other defenses are urged which will be considered in order.

I. Fraud In Procuring Employment

■ The first of these defenses is that the plaintiff secured his employment with the defendant by fraud and is, therefore, excluded from recovery under the decision of the Supreme Court in Minneapolis, St. P. & S. S. M. R. Co. v. Rock, 1929, 279 U.S. 410, 49 S.Ct. 363, 73 L.Ed. 766. The trial judge did not submit this issue to the jury declaring that there was insufficient evidence to support a finding for the defendant on this issue. D.C.W.D.Pa.1954, 128 F. Supp. 909. We must, therefore, examine the appeal with the point in mind that if there is anything on which the jury could have found for the defendant on the fraud issue there must be a reversal to give it an opportunity so to find. The alleged fraud was a statement by the plaintiff in his application blank for employment that he had never had a surgical operation. Whether this answer was actually written by the plaintiff is very doubtful. But that he signed this document with the answers filled in by another is perfectly clear. The plaintiff had had a surgical operation, namely, the removal of an eye. At the time he went to work for the Pennsylvania Railroad a glass eye had been substituted for the one removed.

There is some doubt whether the plaintiff had not been "hired" and put to work for the defendant, glass eye and all, before this application was filled in. If this were the situation it is quite clear that the defendant could not be heard to say that it was deceived by anything said by the plaintiff. We do not rest the case upon this point however. The evidence concerning when employment actually began was not sun clear and was, therefore, the type of question which would have to be settled by submitting it to the trier of the fact.

Without this point, however, we think the case on this question of fraud is perfectly clear and in the plaintiff's favor. This man was one of a group of seventy-five or more secured for railroad employment at one time by an agency known as the Peter Pan Employment Company. They went through an examination by the railroad's doctor who is now dead. His report stated 20–30 vision by the plaintiff for each eye. The plaintiff says that all the examination consisted of was a direction by the physician to read something from a card. At any rate, the documentary evidence shows that the plaintiff was certified as having 20–30 vision in each eye while the fact, now claimed by the railroad and admitted by the plaintiff, is that one of his eyes was a glass substitute.

■ The cases which have dealt with this question of fraud in procuring employment in obedience to the Rock decision are quite numerous. A collection of them may be found in 136 A.L.R. 1125 (1942). We think the Ninth Circuit in Southern Pac. Co. v. Libbey, 1952, 199 F.2d 341, has made a good statement

1. 35 Stat. 65, as amended, 53 Stat. 1404, 45 U.S.C.A. § 51.

of the criterion which it in turn took from the Supreme Court decisions on this point. Minneapolis, St. P. & S. S. M. R. Co. v. Rock, supra, and Minneapolis, etc. R. Co. v. Borum, 1932, 286 U.S. 447, 52 S.Ct. 612, 76 L.Ed. 1218. One who has procured his employment by fraud may not recover "providing the false statement was of such character that it 'substantially affected the examining surgeon's conclusion that he was in good health and acceptable physical condition'." [199 F.2d 348.] Applying that criterion to the examining physician here the result is too obvious to need elaboration.

Defendant's counsel ingeniously suggests, taking his cue from the Rock case, that perhaps somebody else other than the plaintiff was the one examined by the doctor. This, he suggests, might account for the discrepancy between a 20–30 vision and a glass eye. We think the suggestion too fantastic to be taken seriously. There is not a single shred of evidence to support it.

Defendant also calls our attention to an illustration put in Restatement, Contracts, § 471, Illus. 8. There it is said that where the owner of a one-eyed horse turns the beast in such fashion that the prospective purchaser cannot see the blind eye and is deceived into buying the animal thinking him sound the concealment is fraud. We have no doubt that in that case the purchaser ought to be able to void the contract for fraud.

■ We think, however, that the complete answer to this argument is found in a comment upon the same subject in Section 541, Restatement, Torts.

"The recipient in a business transaction of a fraudulent misrepresentation is not justified in relying upon its truth if its falsity is obvious.

"*Comment:*

"A. While the recipient of a fraudulent misrepresentation is not barred from recovery because he could have discovered its falsity had he shown his distrust of the maker's honesty by investigating its truth, he is nonetheless required to use his senses and cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory inspection of the article. Thus, if one induces another to buy a horse by representing it to be sound, the purchaser cannot recover even though the horse has but one eye if the horse is shown to the purchaser before he buys it and the slightest inspection would have disclosed the defect * * *"

■ This plaintiff worked for the railroad for something more than two years before he sustained the injury sued for in this case. It is inconceivable that persons who directed him and the persons who worked with him, and, for that matter anybody else who came in contact with him, could not see that he had a defective eye. Fraud is not available as a defense in this case.

**II. Scope of Employment**

The second defense relied upon by the defendant is that this plaintiff was not in the employment of the railroad at the time he was hurt and, therefore, not within the protection of the Federal Employers' Liability Act.

The plaintiff had been paid on June 24th, which was two days before the accident. He did not work the day following pay day but went from the place on a siding where he and his fellow workers were housed and fed into the town of Beaver Falls, Pennsylvania. In the early morning of June 26th he came back from Beaver Falls, walked along the little used track of the railroad which ran within fifteen feet of the bunk cars, and was struck by a passing train after he had passed some of the bunk cars but about a car length from the car in which he was housed. It was undisputed that the track workers who were housed in this set of bunk cars were subject to call at any time of day or night. It was also shown that there was work for the men the day the plaintiff took off and

went to Beaver Falls; it was also shown there was work for the men the next day.

The trial judge told the jury that the plaintiff was entitled to protection of the Act at the time he was hurt. The defendant says no, he was not back in his employment until he reached the bunk car where he lived.

We do not think that the ascertainment of when a man is under the protection of the Act is to be determined by any such mechanical rule as the defendant contends. This is no baseball game in which the runner must touch base in order to be safe. The cases which have discussed the problem of course present great varieties in their facts but the Second Circuit's decision in Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 1947, 160 F.2d 15, is one which comes as close to our set of facts as one is likely to find. The court, under circumstances almost like those here, held that the employee was under the protection of the Act. We think that case was right and we follow it.[2]

We think this position is also in line with the tenor of the cases on the subject in this Court although, of course, we do not suggest that they are all fours as to the facts in this case.[3]

It is true that the cases dealing with this point do not all contain language to the same effect. Any problem which turns on close differences of fact is one in which courts deciding a given case may use language which seems to indicate a point of view which may vary from court to court and case to case. For instance, Atchison, T. & S. F. R. Co. v. Wottle, 10 Cir., 1952, 193 F.2d 628, which is clearly distinguishable on its facts, has some language looking just a little toward the defendant's side. It also has the very understanding statement by the court that, 193 F.2d at page 630, "the difficulty arises, as always, in drawing the dividing line in the twilight zone. Adjudicated cases are helpful only as factual analogies."

Our conclusion on this phase of the case is that the trial court was right in telling the jury that this man, when injured, was sufficiently in the course of his employment to have the benefit of the Act if his case otherwise came within it.

III. Improper Argument To Jury

The third point raised by the defense is that the counsel for the plaintiff so misbehaved himself in his summation that the defendant did not receive a fair trial. As would be expected, Robinson v. Pennsylvania R. Co., 3 Cir., 1954, 214 F.2d 798, is relied upon by the appellant. We decided that case thoughtfully with a full knowledge of what had occurred in the trial court. We have no inclination to cut the Robinson case down or get away from it by confining it to its exact facts. On the other hand, we are not going to order a new trial every time one lawyer makes remarks about an opposing party in a law suit which that party's lawyer does

2. Some other cases which uphold this proposition are: Chicago, M., St. P. & P. R. Co. v. Kane, 9 Cir., 1929, 33 F.2d 866. (Employee arrived at bunk cars evening prior to date of accident and next morning was injured while crossing tracks for the purpose of going to the toilet facilities provided by the company. Employee had not started any actual work for railroad); Virginian Ry. Co. v. Early, 4 Cir., 1942, 130 F.2d 548, 550. (Employee went from machine shop to lunchroom provided by railroad to get a cup of coffee and when he reached a point within 200 feet of the shop on his return trip he was injured The court held he was acting in his capacity as an "employee" and was within the "scope of employment".); Atlantic Coast Line R. R. v. Meeks, 1947, 30 Tenn.App. 520, 208 S.W.2d 355. (Employee on day he was given off, but allowed to remain in bunk cars, after spending day in town returned to bunk car and was injured by exploding oil lamp. The court held the employee was in the scope of his employment.); and see also the cases cited in footnote 3.

3. Lukon v. Pennsylvania R. Co., 3 Cir., 1942, 131 F.2d 327; Healy v. Pennsylvania R. Co., 3 Cir., 1950, 184 F.2d 209.

not like. Plaintiff's counsel suggested to the jury that the defendant was unfair in certain respects. But the charge of unfairness rose out of controversial matters which had come up in the course of the trial. The matters were proper subjects of comment by counsel. We have read the argument complained of. We think it really rather mild as those things go and a long way from the kind of court room brawl involved in the Robinson case.

The Supreme Court of Pennsylvania has properly set out the rule to be applied in such cases. In Narcisco v. Mauch Chunk Tp., 1952, 369 Pa. 549, 551–552, 87 A.2d 233, 234–235, that Court stated:

> "It is well established that any statements by counsel, not based on evidence, which tend to influence the jury in resolving the issues before them solely by an appeal to passion and prejudice is improper and will not be countenanced. As we have stated on many occasions: ' * * * a verdict obtained by incorrect statements or unfair argument or by an appeal to passion or prejudice stands on but little higher ground than one obtained by false testimony.' * * *

> "This Court is, of course, well aware that occasionally, in the heat of trial, counsel may make a statement which is not justified by the record but which may or may not have had a prejudicial effect on the jury. For that reason the granting of a new trial rests largely in the discretion of the trial judge. If he feels that an admonition to the jury to disregard the remark is sufficient we are reluctant to reverse since the trial judge is in a better position to see and understand the atmosphere of the trial and the effect the statement had on the jury. * * * But this Court is quick to act when there has been an abuse of discretion and

that is determined by an examination of the remark made, the circumstances under which it was made and the precautions taken by court and counsel to remove its, prejudicial effects. * * * " [4]

The trial court in this case reviewed this argument in the motion for a new trial and found that: "If the summation was in some respects improper, the impropriety was a mere isolated lapse, which * * * amounted to very little when viewed and compared with the evidence as a whole." We agree with this opinion of the trial court and find no such abuse of discretion as to justify reversal on this ground.

The judgment of the district court will be affirmed.

---

4. See also Menarde v. Philadelphia Transp. Co., 1954, 376 Pa. 497, 509, 103 A.2d

681, 687; United States v. Cohen, 2 Cir., 1949, 177 F.2d 523, 527.