Orie W. DAVIS, Appellee,

v.

BURLINGTON NORTHERN, INC., Appellant.

No. 76–1124.

United States Court of Appeals, Eighth Circuit.

Submitted June 16, 1976.

Decided Aug. 19, 1976.

Rehearing and Rehearing En Banc Denied Sept. 15, 1976.

Certiorari Denied Dec. 6, 1976.
See 97 S.Ct. 533.

Harry B. Otis, Omaha, Neb., for appellant; Philip L. Garland of Gaines, Spittler, Otis, Mullen & Carta, Omaha, Neb., on brief.

Robert M. Frisbee, Minneapolis, Minn., for appellee; Joseph P. Inserra of Krause, Inserra, Petersen & Burkhard, Omaha, Neb., on brief.

Before ROSS, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

This is an action under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, to recover damages for personal injuries sustained by the plaintiff in the course of his employment which were allegedly caused by the defendant railroad's negligence. Defendant's motions for directed verdict made at the close of plaintiff's evidence and at the close of all the evidence were denied, as were its motion for judgment notwithstanding the verdict and its motion for new trial, made after the district court[1] entered judgment on the verdict in

1. The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska.

favor of plaintiff.[2]  Defendant appeals, assigning as error the denial of these motions and the refusal to give and the giving of certain instructions.  We reverse and direct the entry of judgment notwithstanding the verdict.

Defendant contends that it was entitled to a directed verdict or judgment notwithstanding the verdict for either of two reasons:  first, in that the plaintiff was not acting within the scope of his employment at the time he was injured or, second, in that the plaintiff failed to make a prima facie case that the defendant was negligent.

In order to consider these contentions, it is first necessary to summarize in some detail the relevant evidence presented by the plaintiff.  The plaintiff, at the time of the incident, was employed by the defendant as a conductor and brakeman.  On March 26, 1973, the day of the accident, the plaintiff had come to the Council Bluffs, Iowa, area on a local freight run.  After checking in at the railroad yard's tower, the plaintiff went to the railroad bunkhouse to wait for his next freight run.  According to the testimony, the defendant provides housing in the bunkhouse free of charge for its employees to stay in while waiting between runs.  Although the employees are not required to stay in the bunkhouse but instead may obtain housing elsewhere, it appears that it is customary for them to do so.

While at the bunkhouse between runs, the plaintiff and other railroad employees were off duty.  However, during this period the employee would be subject to call to report for duty if an emergency would arise, but normally an employee was entitled pursuant to federal law to a period of rest.  The employee could leave the bunkhouse and go elsewhere to eat or shop, but he was required to keep the railroad in-

formed of his location so that he could be contacted if he was needed.

On the night of the incident, the plaintiff remained at the bunkhouse until 8:00 or 9:00 o'clock, when he left to go to a nearby tavern to obtain cigarettes.  Central to the disposition of this case is the route which he took in going to and coming from the tavern.[3]  The plaintiff left the bunkhouse area by traveling on a dirt or rock[4] road which lay on railroad property between the bunkhouse and 16th Avenue, a city-owned street.  This dirt road was the only practical means of travel between the street and the railroad housing.  Once he reached 16th Avenue, the plaintiff walked in a westerly direction along a well-worn path which ran parallel to 16th Avenue along the south side of the avenue.  Plaintiff recalled that prior to highway construction later described herein the path was in the nature of a sidewalk consisting of brick and cinders.  Upon reaching the intersection of 16th Avenue and 6th Street, the plaintiff crossed 16th Avenue and walked north along 6th Street until he reached the tavern.

While at this tavern, the plaintiff purchased some cigarettes and consumed one and one-half beers.  The plaintiff next went to a cafe located a short distance from the tavern where, he testified, he bought a cup of coffee.  He then left to return to the bunkhouse, traveling along the same route he had earlier used.  Shortly after beginning his walk along the path which lay on the south side of 16th Avenue, the plaintiff stepped on something which, according to his testimony, caused him to fall off the path into a ditch created by construction work in this area.[5]  The plaintiff, either as a result of this stumbling on the path or his fall into the ditch, received a broken ankle

2.  The jury awarded the plaintiff $90,000 in damages for his injuries.

3.  Attached to this opinion as Appendix A is a sketch showing the location of the bunkhouse, the commercial establishments and the routes in question.

4.  Witness Gross described it as a dirt road while plaintiff called it a rock road.  There is

no claim that the condition of this road was a factor in plaintiff's injury.

5.  Plaintiff indicated on sketch map (Appendix A) the route and area where he fell by drawing a solid line from the cafe to that point (south edge of 16th Avenue at intersection with 6th Street).  To clarify we have added "Plaintiff fell ———."

which has caused him to be permanently disabled.

Plaintiff was found by Gross and Pitkin, two other railroad employees, at approximately 1:00 a. m. in the excavation area outside the railroad right-of-way some 125 feet from where plaintiff testified he fell.[6] Pitkin, who was not available to testify at the trial, had traversed the same route used by the plaintiff. Gross, on the other hand, had crossed 6th Street and walked along the north side of 16th Avenue along the edge of a parking lot and had then crossed 16th Avenue at a point opposite the dirt road which led to the bunkhouse. Gross testified that there had been two routes that railroad employees could take from the bunkhouse to the tavern-cafe area. Gross had customarily taken the route he had traversed on the night in question, although he sometimes used the other route. However, he could not say which route was customarily taken by other employees. The plaintiff testified that although he sometimes traveled by other routes to the tavern-cafe area, the route he traversed on that night was the one he generally took. He also did not know which route was customarily taken by other employees.

The path on which the plaintiff stumbled lay across land which had been formerly owned by the railroad but which was owned by the state of Iowa at the time of the incident. Construction of an entrance ramp for the interstate highway system had begun on the land some three months prior to the incident and had caused debris, some of which appeared to have been railroad ties, rails, and other railroad instrumentalities which had been lying in the area, to be scattered about. Although the plaintiff did not know what caused him to stumble, a jury could have found that it was this debris. There were no barricades or warning signs to keep passers-by out of the area, nor was there illumination of the construction area or path sufficient to make visible the dangers at night.

The Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, makes a common carrier engaged in interstate commerce[7] "liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *." Under this Act, the railroad will be liable if its negligence played any part, even the slightest, in producing the employee's injury. *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); *Nivens v. St. Louis Southwestern Ry. Co.*, 425 F.2d 114, 118 (5th Cir.), *cert. denied*, 400 U.S. 879, 91 S.Ct. 121, 27 L.Ed.2d 116 (1970). However, to recover under the FELA, a plaintiff must still prove that the employer was negligent. *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 32, 64 S.Ct. 409, 88 L.Ed. 520 (1944); *Chicago Great Western Ry. Co. v. Casura*, 234 F.2d 441, 447 (8th Cir. 1956). In this respect, a plaintiff's prima facie case under the Act must include all the same elements as are found in a common law negligence action. *McGivern v. Northern Pacific Ry. Co.*, 132 F.2d 213, 217 (8th Cir. 1942).

Included in the plaintiff's prima facie case then is the element of foreseeability. To recover, the plaintiff must prove that the railroad, with the exercise of due care, could have reasonably foreseen that a particular condition could cause injury. *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 117, 83 S.Ct. 659, 9 L.Ed.2d 618 (1963); *Inman v. Baltimore & Ohio R.R. Co.*, 361 U.S. 138, 140, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959). The defendant's duty is measured by what a reasonably prudent person should or could have reasonably anticipated as occurring under like circumstances. *Gallick v. Baltimore & Ohio R.R. Co.*, *supra*, 372 U.S. at 118, 83 S.Ct. 659.

With this principle in mind, we proceed to examine the plaintiff's specific allegations of negligence. In considering

---

6. Area where plaintiff was found is indicated on sketch map by a circled "X".

7. The defendant concedes that it is a common carrier engaged in interstate commerce.

these contentions, we must be mindful of the posture of the case as it is now before us. The actual question presented is whether the district court properly denied the defendant's motion for a judgment notwithstanding the verdict, pursuant to Rule 50(b), Fed.R.Civ.P. This motion cannot be granted, of course, unless as a matter of law the opposing party failed to make a case and a verdict in the movant's favor should have been directed. *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Schneider v. Chrysler Motors Corp.*, 401 F.2d 549, 554 (8th Cir. 1968). We must now view the evidence in the light most favorable to sustaining the jury's findings and must give the prevailing party the benefit of every reasonable inference which may be drawn from the evidence. *Nodak Oil Co. v. Mobil Oil Corp.*, 533 F.2d 401, 407 (8th Cir. 1976); *Linn v. Garcia*, 531 F.2d 855, 858 (8th Cir. 1976); *Figge Auto Co. v. Taylor*, 325 F.2d 899, 901 (8th Cir. 1964). Judgment notwithstanding the verdict must be granted if the evidence, so viewed, was such that reasonable men could not differ as to the conclusion that the plaintiff's proof had failed to meet its burden as to an essential element of the cause of action. *Linn v. Garcia, supra*, 531 F.2d at 858; *Simpson v. Skelly Oil Co.*, 371 F.2d 563, 567 (8th Cir. 1967); *Hanson .v. Ford Motor Co.*, 278 F.2d 586, 596 (8th Cir. 1960); *Morris Bros. Lumber Co. v. Eakin*, 262 F.2d 259, 263 (3d Cir. 1959).

The plaintiff alleges that the defendant was negligent: (1) in failing to provide the plaintiff a safe and easy means of access to its bunkhouse; (2) in failing to assure that the contractors working in the area cleaned up and maintained the area in a safe and suitable condition; (3) in failing to see that lights, barricades or other warnings were placed to protect the area under construction; and (4) in failing to provide the plaintiff a safe place to work. The defendant contends that the plaintiff failed to make a prima facie case in each of these allegations of negligence, in that the plaintiff did not prove the essential element of foreseeability, and that therefore the case should not have been submitted to a jury.

To recover under any of these allegations of negligence, the plaintiff first had to establish that the railroad could have reasonably foreseen that the plaintiff would be where he was when the injury-causing event occurred, that is, walking along the path.[8] The plaintiff was required to show that this path had been traveled by railroad workers to such an extent that the railroad should have reasonably known that this was a route customarily used by its employees despite the new excavation and construction and that it needed to exercise ordinary care in assuring the safety of the route. It is our view that the plaintiff failed to adduce sufficient evidence to warrant submitting this matter to the jury.

The evidence indicated that two routes between the bunkhouse and the tavern-cafe area were utilized, the one used by the plaintiff and Pitkin, one of the men who discovered the plaintiff after his injury, and the route used by Gross, the plaintiff's chief witness. Gross testified that he customarily traveled the route he had used that night and the plaintiff testified that he customarily traveled the route he had used. However, neither witness could testify as to which route was customarily taken by other employees. The fact that two men had used the path followed by plaintiff does not

---

**8.** Central to the plaintiff's case under any of these allegations of negligence is the contention that the railroad had a duty to make this route from the tavern-cafe area to the bunkhouse reasonably safe and that the railroad negligently failed to do so, for example, by failing to assure that the contractors working in the area cleaned up and maintained the area in a safe and suitable condition. It is clear that a railroad has a duty to provide to its employees a reasonably safe means of ingress to and egress from its premises. *Kimbler v. Pittsburgh & Lake Erie R.R. Co.*, 331 F.2d 383, 385 (3d Cir. 1964); *Kooker v. Pittsburgh & Lake Erie R.R. Co.*, 258 F.2d 876 (6th Cir. 1958); *Morris v. Pennsylvania R. Co.*, 187 F.2d 837, 841 (2d Cir. 1951). However, the extent of this duty depends upon whether the railroad could reasonably anticipate that the employee would use the route that he did, which the plaintiff has the burden of establishing.

permit the conclusion that this was a customarily used route requiring the attention of the railroad. Furthermore, since the land over which the path lay was no longer owned or controlled by the railroad and was an area where road construction was being conducted by the state of Iowa, it is unreasonable to suppose that the railroad should have reasonably anticipated that its employees would continue to use a path which lay across land strewn with construction debris and ditches. We conclude that the district court should have granted the defendant's motion for judgment notwithstanding the verdict.

The defendant also contends that the plaintiff, in visiting the tavern-cafe area, was not acting within the scope of his employment at the time of the incident and therefore could not bring this action under the Federal Employers' Liability Act. In support of this contention, the defendant mainly relies upon *Atchison, T. & S.F.R. Co. v. Wottle*, 193 F.2d 628 (10th Cir. 1952). The district court submitted this issue to the jury for determination under instructions objected to by the defendant. The plaintiff cites *Mostyn v. Delaware, L. &. W.R. Co.*, 160 F.2d 15 (2d Cir. 1947), and *Casso v. Pennsylvania R.R. Co.*, 219 F.2d 303 (3d Cir. 1955), as supporting his contention that he was acting within the scope of his employment. Because of our disposition of this case upon the grounds that plaintiff failed to create a submissible case on the issue of defendant's negligence, we need not consider this question.[9]

For these reasons, the judgment of the district court is reversed and the case is remanded with directions to enter judgment notwithstanding the verdict.

Appendix A to follow.

---

9. We note, however, that in *Mostyn* and *Casso* the injuries were sustained while the employee was on the defendant railroad's premises.