## FLACK v. DELAWARE, L. & W. R. CO.
### No. 62.

Circuit Court of Appeals, Second Circuit.

Dec. 1, 1930.

684

Douglas Swift, of New York City, for appellant.

Evans, Hunt & Rees and William G. Walsh, all of New York City (G. Everett Hunt, of New York City, of counsel), for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The questions before us are whether the Federal Employers' Liability Act (45 USCA §§ 51–59) applied to the facts of this case, and, if it did, whether the trial court gave proper instructions as to contributory negligence.

The plaintiff was employed by the defendant railroad company as a machinist in its roundhouse at Hampton, Pa., near the city of Scranton. The roundhouse was maintained for the housing of engines and the making of light repairs. The records of the railroad showed that engine No. 2227 arrived at the roundhouse on December 13, 1927, and was inspected for repairs. The inspection showed that the valves were blowing and it was necessary to dump the fire out of the engine; that the brick fire box was down and had to be reset; that a keeper bolt was gone out of the back end of the middle rod and the glass was broken in a steam gauge. The testimony showed that the workmen removed the valve chamber heads, six of them, and removed the three valves, bored the two outside bushings and two outside valve chambers, removed the middle valve chamber bushings, took down the transverse arm and brackets, removed the cylinder heads in order to clear out the borings, removed the wrist pins from the crosspieces in order to push the pistons out far enough to blow the chips out of the cylinder, and replaced the bricks in the arch of the fire box. The repairs on the engine were made during six of the twelve days between the time when it was placed in the roundhouse on December 13th and when the work was completed on December 24th, and occupied the time of a machinist and his helper for an aggregate period of eighty-five hours, taking into account the time spent by the two workmen.

The plaintiff testified that on December 21st, while he was making repairs on another engine, he was ordered by his foreman to get the valves of engine No. 2227 ready for rings on the left side of the engine because it was then scheduled for a trip to Buffalo on the next day. A great part of the repairs on engine No. 2227 had already been made by others. He said that at 3 p. m., on December 21st, he had scraped off the grease and tried the nuts on the valve and had practically finished getting it ready for the rings, and that at this time the engine was fired up. He then quit work for the day and went home, leaving his tools so that he could finish his job in the morning by placing the rings in the cylinder of the valve. The next morning, December 22, at about 7 a. m., he started back in an automobile to complete his work, and, while crossing the tracks of the defendant which lead out of the roundhouse, was struck and injured by an engine which came out of the roundhouse. He testified that he did not see the approaching engine, though he was looking all the time, until it was almost on him. The acts of negligence relied on were failure on the part of the engineer to ring a bell or blow a whistle. The plaintiff said that his view was obstructed by the corner of the roundhouse until after he got part way on the tracks and it was too late to withdraw from his position in view of the speed of the on-coming engine.

The court left it to the jury to determine whether or not engine No. 2227 was so withdrawn from interstate commerce by reason of the repairs that the plaintiff was not engaged in interstate commerce at the time of the accident.

The court, in general terms, gave a charge as to the effect that any contributory negligence would have upon the damages which

the plaintiff might be entitled to recover by reason of the defendant's negligence, but refused specific requests by the defendant to charge, two of which were the following:

"If the plaintiff could not be sure otherwise whether an engine was dangerously near the crossing, it was his duty to stop and look, and if necessary to stop and get out of his automobile, before driving on or over the tracks at the crossing."

"The plaintiff was not relieved from the duty of stopping and looking, and getting out of his automobile, if necessary, for the purpose of ascertaining whether or not an engine was dangerously near the crossing by the fact, if the jury should find it to be a fact, that he did not hear the engine or any signal."

It is contended by the defendant that the plaintiff was not engaged in interstate commerce or in work so closely related as to be practically a part of it when the accident occurred. This contention is based on the substantial nature of the repairs on the engine and the length of time that it was laid up.

In Minneapolis & St. Louis R. R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 171, 61 L. Ed. 358, Ann. Cas. 1918B, 54, the engine was laid up for repairs for only three days. It did not appear either that it was always used in interstate commerce or that it was about to be so used when the repairs were completed. Under those circumstances the Supreme Court held that a workman who was injured while repairing the engine in question was not engaged in interstate commerce. Justice Holmes said:

"An engine, as such, is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

In Industrial Accident Commission v. Davis, 259 U. S. 182, 42 S. Ct. 489, 491, 66 L. Ed. 888, where the repairs to an engine involved a general overhauling and covered an interval of nearly two months, the Supreme

Court held that a machinist injured in the work of repairs was not engaged in interstate commerce. Justice McKenna said that equipment out of use might or might not partake of the character of an instrumentality of interstate commerce "according to circumstances, and among the circumstances is the time taken for repairs—the duration of the withdrawal from use." The engine in that case had been employed in interstate commerce. It was first used after the repairs on an intrastate trip, but shortly after resumed the interstate run on which it had been originally engaged.

In the case at bar there was testimony that the engine on which the plaintiff had worked on December 21st, and upon which he was proposing to do further work on December 22d in order to complete the repairs, had been definitely assigned to interstate commerce. To be sure, the shop records introduced by the defendant tended to disprove plaintiff's claim that only a trifling amount of repairs remained to be made and that the engine was almost ready to resume its interstate work. But we are dealing with the verdict of a jury, and the evidence most favorable to the plaintiff indicated that the engine was already fired on the afternoon of December 21st, that little in the way of repairs then remained to be done, and that the engine which never in fact was engaged in anything but interstate business was almost ready to resume its trips. In these circumstances we cannot say that it was not an instrumentality of such commerce where it was assigned to it and was about to enter it in the near future.

In North Carolina R. R. Co. v. Zachary, 232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159, a foreman, while going across the railroad tracks to his boarding house, was killed before his engine was coupled to the train, but after he had inspected, oiled, and fixed it for an interstate trip. He was held engaged in interstate commerce and entitled to recover under the Federal Employer's Liability Act for injuries caused by the negligence of the railroad. Justice Holmes, in Minneapolis & St. Louis R. R. Co. v. Winters, supra, laid stress upon the fact that there the next work "might be interstate or confined to Iowa." Here the engine was already assigned to interstate commerce, shortly entered it, and had never been engaged in anything else.

In all the circumstances we think there was enough proof that the plaintiff was en-

gaged in interstate commerce at the time of the accident to go to the jury.

But the judgment must be reversed for failure to charge as requested in respect to stopping and listening. There can be no doubt that the plaintiff either did not look with any care after he passed beyond the corner of the roundhouse in his automobile, or that the roundhouse extended so far out that he could not see up the tracks sufficiently to guard against the on-coming engine. If the latter was the case, as his own testimony seemed to indicate, he should have stopped his car before he went on the tracks and put himself in a position to ascertain whether anything was coming down the track. He was not justified in relying upon hearing a signal.

In such circumstances the defendant was entitled to more than a general charge about the effect of contributory negligence, and the proposed requests to charge should have been granted. B. & O. R. R. v. Goodman, 275 U. S. 66, 48 S. Ct. 24, 72 L. Ed. 167, 56 A. L. R. 645. The standard laid down in the Goodman Case is very strict, but has been prescribed by the Supreme Court.

The judgment is reversed.