**LUKON v. PENNSYLVANIA R. CO.**

No. 7988.

Circuit Court of Appeals, Third Circuit.

Argued July 9, 1942.

Decided Nov. 5, 1942.

MARIS, Circuit Judge, dissenting.

Fred B. Trescher, of Greensburg, Pa. (Kunkle, Walthour & Trescher, of Greensburg, Pa., on the brief), for appellant.

Samuel W. Pringle, of Pittsburgh, Pa. (Dalzell, McFall & Pringle, of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The suit is one brought under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., by the executrix of Mike Lukon, to recover damages from The Pennsylvania Railroad Company by reason of alleged negligence which caused Lukon's death. At the close of the evidence the defendant

moved the court to direct a verdict in its favor and also requested binding instructions. Both of these motions were refused. The jury returned a verdict in favor of the plaintiff in the sum of $2,876.80. Thereafter the defendant moved for an order directing that the verdict and judgment thereon be set aside and that judgment be entered in favor of the defendant. The plaintiff moved for a new trial. The learned District Judge granted the defendant's motion to have the verdict and judgment set aside, pursuant to rule 50(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and entered judgment in accordance with the defendant's motion for a directed verdict. The plaintiff's motion for a new trial was refused.[1] The appeal at bar followed.

The essential facts are not in dispute. Lukon was a section hand on the Pennsylvania Railroad. At the time of the accident he was returning from his work and was walking westerly on a path along the defendant's tracks on the outskirts of Jeannette, Pennsylvania. Walking behind Lukon was Earl McGraw, an employee of the Pennsylvania Rubber Company who had followed him for some distance along the path. McGraw was about one hundred twenty-five feet in back of Lukon at the time of the accident. An east bound local passenger train approached on the track beside which Lukon and McGraw were walking. McGraw said in respect to this train that it was "pulling heavy, * * * the train was. They were making up time coming in along that stretch." McGraw testified that he saw the front part of the locomotive approaching Lukon and at that time he turned his head to avoid the dust and cinders. He looked after the train had passed and observed Lukon lying across the pathway at a few feet beyond the place where he had last seen him. He also stated that there were no persons nearer Lukon than himself nor any airplane or other object overhead at the time.

Some of the witnesses testified that Lukon's feet were on the south side of the pathway. Others said that Lukon's head was between the pathway and the ballast. He was lying on his back, was unconscious and blood was flowing from a wound in his head. A policeman testified that there were lumps of coal the size of his fist lying about Lukon's head. Another witness gave substantially similar testimony. Lukon's cap as well as his coat which he was wearing were put in evidence. The cap was made of heavy felt with a fur lining. Some object with considerable force behind it apparently had struck the cap, had torn through it and had hit Lukon. The policeman testified that he observed the hole in the cap and saw particles of coal embedded in the felt and fur lining. Fine particles of coal are visible in the back of the cap today, close to the jagged tear in the felt.

A witness testifying on behalf of the defendant stated that he had been following Lukon along the track and saw a local freight train loaded with coal which had been ground down in size, approaching on the track near Lukon. He testified that he saw the engine and one or two cars pass Lukon. At this point he looked away to a truck on Penn Avenue. When he looked back Lukon was lying along the pathway.

The testimony is conflicting as to which train passed Lukon before he was discovered lying injured on the path. It was the duty of the jury to reconcile it and in view of the verdict we are justified in assuming the existence of that state of facts most favorable to the plaintiff.

Lukon was about fifty years of age. The record indicates that he was in excellent health, though he had just recovered from a toe injury which had incapacitated him for a short period of time. He had returned to work the day before the fatal accident.

The negligence charged in the complaint was the piling of coal on a locomotive tender or upon railroad cars so loosely or so high that a lump or lumps of it became dislodged, and a failure to make a proper inspection of the manner in which the coal was loaded upon the tender or cars.

The defendant asserts two defenses. First, that the evidence was insufficient to support a finding that Lukon's injuries resulted from a cause for which the defendant could be held liable to the exclusion of other equally probable causes for which the defendant would not be liable; and, second, that Lukon was not in the course of his employment by the defendant in interstate transportation at the time of his injury and, therefore, was not within the purview of the Federal Employers' Liability Act.

---

[1] See Lukon v. Pennsylvania R. Co., D. C., 43 F.Supp. 546.

■ Before coming to a discussion of these two questions we are required to determine what law governs. We, of course, must look to the act itself, but our next question is what decisional law controls the interpretation of the act. We discussed this question to some extent in our recent decision in Jacobs v. Reading Company, 3 Cir., 130 F.2d 612. We there indicated that the leading case of Chesapeake & O. R. Co. v. Kuhn, 284 U.S. 44, 46, 47, 52 S.Ct. 45, 76 L.Ed. 157, holding that federal decisions are controlling in interpreting the act determines this issue and we so hold here. Second Employers' Liability Cases (Mondou v. New York, N. H. & H. R. Co.), 223 U.S. 1, 57, 58, 32 S.Ct. 169, 56 L.Ed. 327, 38 L.R.A.,N.S., 44.

■ We will deal with the second question first. Was Lukon injured while engaged in interstate transportation? Admittedly he was employed by a carrier so engaged. The defendant concedes that until four o'clock in the afternoon of the day of the accident Lukon was engaged in work on the tracks of an interstate carrier. On the particular afternoon when he was injured he was working upon the main line tracks of the Pennsylvania Railroad at a point near a tower close to the east end of the section. He had worked on this particular section for years. His working day commenced at 8 A.M. and ended at 4:30 P.M. Upon the afternoon of the accident he and the other men of his gang stopped work at 4 P.M. so that the men might have an opportunity to return the tools to the tool house which was some distance from the point where they were working. Lukon had no tools to deliver but he walked back with the other men toward the tool house, which also was in the direction of his home. It is true that Lukon might have left the tracks and gone to his home by means of public roads. It was not his custom to do this, and on the day of the accident he pursued his usual course of going home along the tracks as did other members of his crew. The Federal Employers' Liability Act was designed to be applied liberally for the protection of railroad and other employees. In the leading case of Erie R. Co. v. Winfield, 244 U.S. 170, 173, 37 S.Ct. 556, 61 L.Ed. 1057, Ann. Cas.1918B, 662, the Supreme Court held that an employee leaving the yards at the close of the day's work was within the purview of the act. See, also, Robert's Federal Liability of Carriers, 2nd Edition, 1929, Section 738, p. 1391 and Flack v. Delaware,

L. & W. R. Co., 2 Cir., 45 F.2d 683. Following these authorities, we are of the opinion that Lukon was clearly entitled to the protection of the act and that the contention of the defendant to the contrary cannot be sustained.

■ A more difficult question is whether or not the jury was entitled upon the evidence to draw the inference that Lukon was killed because of the defendant's asserted negligence. Although there was no witness who actually saw Lukon struck, there was ample circumstantial evidence to indicate how he was injured. Such evidence has probative value equal to that of testimonial evidence. Wigmore on Evidence, Third Edition, Section 36.

■ The mere fact of injury is insufficient to enable the plaintiff to recover under the act. The burden is on the plaintiff to prove that the defendant was negligent. None the less under the circumstances of the case at bar, the defendant having control of the trains and the premises, we think that the plaintiff has made out a case to be submitted to the jury. An analogy is presented to those cases arising under the Federal Employers' Liability Act involving defective or improperly cared for appliances or equipment. See the decision in Central R. Co. of New Jersey v. Peluso, 2 Cir., 286 F. 661, 667, certiorari denied 261 U.S. 613, 43 S.Ct. 359, 67 L.Ed. 827, and the decision of the Supreme Court in Southern Ry.-Carolina Division v. Bennett, 233 U.S. 80, 86, 34 S.Ct. 566, 58 L.Ed. 860. In such cases the doctrine of res ipsa loquitur is applicable. The burden of going forward with the proof and negativing the inference of negligence is then upon the defendant.

■ The circumstances of the case at bar bring it within the doctrine of res ipsa loquitur. There was testimony that a train that passed Lukon was going fast, "pulling heavy", making up for lost time. There was testimony that the coal in the tender of the locomotive of this train was not trimmed. Lukon was not injured before a train passed him. After a train passed Lukon, he had a fractured skull. After a train passed him, he was found with lumps of coal as big as a policeman's fist around his head. The particles in his cap were of live coal as distinguished from cinders which could have gotten into the cap from the path when Lukon fell. Taking the circumstances most favorable to the plaintiff, we think that there was sufficient evidence to entitle the jury to conclude that

Lukon was injured by coal falling from one of the defendant's passing trains.

■ From this evidence the jury could find, as it did, that the accident was caused by coal falling from one of defendant's passing trains. The jury drew the inference of the defendant's negligence from the fact of the accident plus the common knowledge that coal does not fall from trains if tenders or cars are properly loaded or trimmed. It was, of course, for the jury to decide also what, if any, of the explanatory testimony offered by the defendant was to be credited. Defendant's witnesses testified that there was no inspection. There would be small profit in tracing the line of decisions and discussing the cases involving the doctrine of res ipsa loquitur since Kearney v. London &c Ry. Co.[2] It is worth noting, however, that the facts in Norfolk & W. Ry. Co. v. McKenzie, 6 Cir., 116 F.2d 632, are enough like the facts of the instant case to make its citation in point. We think the evidence was sufficient for the jury to find that the accident was caused by defendant's negligence.

Our conclusion is that the jury's verdict should stand and that it was error to set it aside.

The judgment is reversed.

MARIS, Circuit Judge (dissenting).

I agree with the District Court that the evidence in this case, wholly circumstantial in character, was insufficient to support a reasonable inference, as contrasted with a conjecture or guess, that the plaintiff's decedent was injured by a lump of coal falling or thrown from a train of the defendant. It seems to me that the jury might just as well have inferred that Lukon, somewhat unsteady because of his recently injured toe, had received his fatal injury when he stumbled against a projecting part of the passing train which happened to be covered with coal dust and that he fell in a place where lumps of coal were lying which had dropped from earlier trains. But this would likewise have been only a guess. I, therefore, think that the action of the court in setting aside the verdict and judgment in favor of the plaintiff and directing entry of judgment in favor of the defendant was right and should be affirmed. I accordingly dissent from the judgment of reversal now entered by this court.