**HARMS, INC., and Bourne, Inc.,**

v.

**SANSOM HOUSE ENTERPRISES, INC., and Muse-Art Corporation.**

**LEO FEIST, INC., Crawford Music Corporation and Williamson Music, Inc.,**

v.

**The LEW TENDLER TAVERN, INC., and Muse-Art Corporation.**

**Civ. A. Nos. 13265, 13267.**

United States District Court
E. D. Pennsylvania.

April 29, 1958.

George E. Beechwood, Philadelphia, Pa., Bernard Korman, New York City, for plaintiffs.

Harry A. Rutenberg, Philadelphia, Pa., for Sansom House, Inc., and Muse-Art Corp.

Norman H. Fuhrman, Philadelphia, Pa., for Lew Tendler Tavern, Inc.

LORD, District Judge.

These are companion cases which were consolidated for the purposes of trial. The points of law involved are identical, and the facts very similar. Accordingly, counsel stipulated at trial that the first-captioned case, Civil Action No. 13265, should be governed by the second. Therefore, the findings of fact, discussion and conclusions of law herein will be confined to the second case, Civil Action No. 13267.

The action is brought by three music publishers as respective claimants of the copyrights in four musical compositions. Unauthorized public performance of this popular music is alleged to have taken place on July 5, 1951, at Lew Tendler's restaurant in Philadelphia. Plaintiffs have set up the infringements of the four compositions as separate causes of action, and seek injunctions, damages of not less than $250 in each cause of action, costs and attorneys' fees. Their complaint alleges that the wrongful acts of defendants have caused and are causing irreparable injury to plaintiffs, for which they are without any adequate remedy at law.

After denial of their motion for non-suit at the close of plaintiffs' testimony, defendants elected to offer no testimony, and moved for dismissal. Upon denial of that motion, defendants rephrased it, designating it as a motion for judgment on the record.

Ruling upon the latter motion was reserved pending further argument of counsel and the submission of briefs. And now the Court, after trial, examination of the pleadings, and consideration of briefs and arguments, makes the following

### Findings of Fact

1. Plaintiff, Leo Feist, Inc., was on July 5, 1951, and still is a corporation duly organized and existing under the laws of the State of New York, engaged in the business of publishing, vending and otherwise marketing copyrighted musical works.

2. Plaintiff, De Sylva, Brown and Henderson, Inc., (whose former corporate name was Crawford Music Corporation) was on July 5, 1951, and still is a corporation duly organized and existing under the laws of the State of New York, engaged in the business of publishing, vending and otherwise marketing copyrighted musical works.

3. Plaintiff, Williamson Music, Inc., was on July 5, 1951, and still is a corporation duly organized and existing under the laws of the State of New York, engaged in the business of publishing, vending and otherwise marketing copyrighted musical works.

4. Defendant, The Lew Tendler Tavern, Inc., was on July 5, 1951, and still is a corporation duly organized and existing under the laws of the State of

Pennsylvania, operating a business for profit at 227–229 South Broad Street, Philadelphia, Pennsylvania.

5. In connection with the operation of such place of business and as part of the entertainment provided there, and for the purpose of attracting trade thereto, musical compositions were and are publicly performed for profit, for the entertainment and amusement of patrons attending such place, and to make such place of business an attractive place for the patronage of the general public.

6. Defendant, Muse-Art Corporation, was on July 5, 1951, and still is a corporation duly organized and existing under the laws of the State of Pennsylvania, engaged in the business of transmitting and furnishing performances of musical compositions to restaurants, taverns and other public places, for profit, by arrangement with the owners or operators of such establishments.

7. Plaintiff, Leo Feist, Inc., was on July 5, 1951, and still is the proprietor of the copyright in the musical composition "Blue Heaven."

8. Plaintiff, De Sylva, Brown and Henderson, Inc., (whose former corporate name was Crawford Music Corporation) was on July 5, 1951, and still is the proprietor of the copyrights in the musical compositions "Smile, Darn Ya, Smile" and "Together."

9. Plaintiff, Williamson Music, Inc., was on July 5, 1951, and still is the proprietor of the copyright in the musical composition "If I Loved You."

10. On July 5, 1951, the compositions "Blue Heaven," "Smile, Darn Ya, Smile," "Together" and "If I Loved You" were publicly performed for profit at the premises of the defendant, The Lew Tendler Tavern, Inc.

11. The said performances were furnished to defendant, The Lew Tendler Tavern, Inc., by defendant, Muse-Art Corporation by transmission over leased telephone wires, pursuant to an arrangement made between the two defendants.

12. Neither defendant had received permission from plaintiff, Leo Feist, Inc., to perform the composition "Blue Heaven," from plaintiff, De Sylva, Brown and Henderson, Inc., to perform the compositions "Smile, Darn Ya, Smile" and "Together," nor from plaintiff, Williamson Music, Inc., to perform the composition "If I Loved You" on July 5, 1951 at said premises of defendant, The Lew Tendler Tavern, Inc.

13. The performances on July 5, 1951 of the said musical compositions caused injury and damage to the plaintiffs, which damage cannot be accurately ascertained or computed.

14. The defendants, Muse-Art Corporation and The Lew Tendler Tavern, Inc., in their answer, pleaded as an affirmative defense in paragraphs 13, 26, 38 and 49 that plaintiffs and the American Society of Composers, Authors and Publishers have formed and effectuated a conspiracy to monopolize the entire field of musical composition in violation of the Anti-Trust Laws and have been guilty of discrimination to the damage and prejudice of the defendants. No evidence was offered at the trial of these cases to sustain said allegations, although the defendants were not denied opportunity to do so.

15. Plaintiffs were required to employ counsel who rendered extensive services in the prosecution and trial of this action, and plaintiffs are entitled to be reimbursed therefor.

### Discussion

■ Ownership of the copyrights is uncontradicted. During the trial, plaintiffs introduced certificates of copyright registration, issued by the Copyright office, for the four compositions named in the complaint. Those certificates are *prima facie* evidence of the facts contained therein under Section 209 of the Copyright Law, Title 17 U.S.C.A.; Jerry Vogel Music Co. v. Forster Music Publishers, 2 Cir., 1945, 147 F.2d 614, certiorari denied 1945, 325 U.S. 880, 65 S.Ct. 1573, 89 L.Ed. 1996; Berlin v. Evans, D.C.E.D.Pa.1924, 300 F. 677; Edward B. Marks Music Corp. v. Borst Music Pub. Co., D.C.D.N.J.1953, 110 F.

Supp. 913. And, as the Berlin case said, in the absence of contradiction, that prima facie evidence was sufficient.

Section 1(e) of the Copyright Law, 17 U.S.C.A., provides that the copyright proprietor shall have the exclusive right "to perform the copyrighted work publicly for profit if it be a musical composition."

■ In construing Section 1(e) of the Copyright Law, the courts have uniformly adopted the view that any performance at a restaurant to which the public is admitted and where food and beverages are sold, is given for the purpose of profit and, if unauthorized, is an infringement of the right granted by this section. Herbert v. Shanley, 1917, 242 U.S. 591, 37 S.Ct. 232, 61 L.Ed. 511.

That case involved copyrighted music played in the dining room of the Vanderbilt Hotel for the entertainment of guests during meal times by an orchestra employed and paid by the hotel company. Mr. Justice Holmes, writing for the court, said:

"If the rights under the copyright are infringed only by a performance where money is taken at the door they are very imperfectly protected. * * * It is enough to say that there is no need to construe the statute so narrowly. The defendants' performances are not eleemosynary. They are part of a total for which the public pays, and the fact that the price of the whole is attributed to a particular item which those present are expected to order, is not important. It is true that the music is not the sole object, but neither is the food, which probably could be got cheaper elsewhere. The object is a repast in surroundings that to people having limited powers of conversation, or disliking the rival noise, give a luxurious pleasure not to be had from eating a silent meal. If music did not pay it would be given up. If it pays it pays out of the public's pocket. Whether it pays or not, the purpose of employing it is profit, and that is enough." 242 U. S. at pages 594–595, 37 S.Ct. at page 233.

The teachings of that decision have been adopted and followed in an apparently unbroken line of cases since 1917. In 1931 the United States Supreme Court answered in the affirmative the following certified question:

"Do the acts of a hotel proprietor, in making available to his guests, through the instrumentality of a radio receiving set and loud speakers installed in his hotel and under his control and for the entertainment of his guests, the hearing of a copyrighted musical composition. which has been broadcast from a radio transmitting station, constitute a performance of such composition within the meaning of 17 U.S.C. § 1(e) [17 U.S.C.A. § 1(e)]?" Buck v. Jewell-La Salle Realty Co., 1931, 283 U.S. 191, 51 S.Ct. 410, 75 L.Ed. 971.

Following that case, it was held that musical copyright was infringed by unlicensed performance for profit where a hotel received the music by radio and "piped" it to the guestrooms of such hotel. The musical outlets were subject to the control of the guests. These intramural broadcasts were audible only when the hotel guests turned the knobs of the speakers in their rooms, and selected the program of choice; yet they were held to be public performances for profit as one of the considerations given to the guests of the Hotel Pennsylvania for the rental of its rooms. Society of European Stage Authors & Composers v. New York Hotel Statler Co., D.C.S.D. N.Y.1937, 19 F.Supp. 1.

Defendants have pressed the fact that this case is of first impression as to the particular form of infringement here alleged. For that matter, it seems to be conceded that there has been no prior decision as to infringement by the present means, i. e.: copyrighted musical compositions played on transcription discs, transmitted by leased telephoned wires to customers who purchase such music service, and who amplify such music on

loudspeakers in their several places of business without permission of the copyright owners.

The circumstance of the novelty of the combination of mechanical means involved, however, does not appear to vary the principles established in the three cases heretofore cited. For that matter, the numerous cases of musical infringement under the act involve infinite combinations of means of musical performance. The principles applied, however, are those of the same leading cases, despite the individual differences as to where and how the music is produced, transmitted, and made audible. e. g. Irving Berlin, Inc., v. Daigle, 5 Cir., 1929, 31 F.2d 832; Buck v. Coe, D.C.M.D.Pa. 1940, 32 F.Supp. 829; Harms v. Cohen, D.C.E.D.Pa.1922, 279 F. 276; Buck v. Heretis, D.C.E.D.S.C.1928, 24 F.2d 876; M. Witmark & Sons v. Calloway, D.C. E.D.Tenn.1927, 22 F.2d 412.

As to whether the particular compositions were in fact played, the only evidence is that of Carl H. Seidenburg, who testified that in July of 1951 he had been employed as an investigator for the American Society of Composers, Authors and Publishers (ASCAP). He stated in response to questions that on the night in question he spent over 3½ hours at Tendler's restaurant. While there, he made notes of all tunes he heard "played with mechanical music" there, and among them were the four compositions here involved: "Blue Heaven," "Smile, Darn Ya, Smile," "Together" and "If I Loved You."

He stated that he was familiar with the popular music of the time in question and the four tunes in question. Without claiming to call himself a musician, he testified that he had played musical instruments and had been in an orchestra or band at school.

The investigator testified that, at the time of his visit at Tendler's, he purchased food and beverages, as did other patrons present at the time.

No evidence in contradiction of any of this testimony was offered, and the Court was favorably impressed with the credibility of the witness.

When asked on cross-examination as to how the music was played, Seidenburg testified that it came through a loudspeaker. In response to the suggestion that the music might have "come through the air," he explained that he heard no commercials; that there were intervals of only a few seconds between records—negativing the suggestion that he might have been hearing radio programs with the commercials "beeped" out; but admitted that he did not explore the premises to determine whether there was any radio in the establishment.

Another witness, an officer of defendant Muse-Art, was called on cross-examination. When asked how Muse-Art transmitted music to its customers, including Tendler, in 1951, he answered:

"We have studios, they are similar to a broadcasting studio. There we had turntables and large transcriptions and we played those transcriptions in our central studio.

"They are transmitted over telephone wires to the establishments of our customer. In the establishments of our customer we have loudspeaking equipment. If that loudspeaking equipment is turned on the music becomes audible."

The music itself, he explained, came from a large disc or record called a transcription. These transcriptions were leased by Muse-Art in its turn from a New York source under a contract which was not produced, and the music was played in sequences determined by programs furnished by the lessor of the transcriptions. The witness was unable to produce programs for the period in question.

The witness testified that Muse-Art charged Tendler a fee for transmitting music to Tendler's at the time in question, although the terms of that contract were not stated.

The witness testified that at the time of the alleged violations, there was no licensing contract in effect between Muse-

Art Corporation and ASCAP, the agency through which licenses for the copyrighted compositions were customarily granted. This same Muse-Art officer testified that there had been such a contract in existence, but it had been allowed to lapse perhaps a year before the time in question. It was at least tacitly conceded that neither Tendler nor Muse-Art had any licensing agreement in effect with the copyright owners, through ASCAP or otherwise, on July 5, 1951.

■ Taking the testimony of these two witnesses together, and in view of the fact that no evidence to the contrary was offered, it has seemed reasonable to this Court, after hearing the witnesses and observing their demeanor, to conclude that the four musical compositions were played at the time and place in question; that the music originated in the Muse-Art studio; and that what the witness Seidenburg heard was that music, transmitted by the described apparatus and not a radio broadcast or, as suggested in argument, from a juke box.

■ Those conclusions are, of course, aided by the familiar principle that inferences may be drawn from silence and from failure to produce evidence. Interstate Circuit v. United States, 1939, 306 U.S. 208, 226, 59 S.Ct. 467, 83 L.Ed. 610, and cases cited; see Vlisidis v. Holland, D.C.E.D.Pa.1957, 150 F.Supp. 678, 683, affirmed 3 Cir., 1957, 245 F.2d 812.

■ Finding 14 has heretofore described the affirmative defense of violation of the Anti-Trust Laws, and has correctly stated that no evidence in support thereof was offered. To avoid possible misunderstanding, it is added that no basis for admitting such evidence, had it been offered, is apparent. It is settled that such defense is not permitted in a copyright infringement action. Harms v. Cohen, D.C.E.D.Pa.1922, 279 F. 276, 280. Although the cases are myriad, only two more which forbade such collateral attack need be mentioned: M. Witmark & Sons v. Pastime Amusement Co., D.C.E.D.S.C.1924, 298 F. 470, 480, affirmed 4 Cir., 1924, 2 F.2d 1020; Buck v. Hillsgrove Country Club, Inc., D.C.D.R.I.1937, 17 F.Supp. 643.

Defendants have strenuously urged that the Muse-Art operation is private since the customer must exercise his option to make the music audible by turning on the loud-speaking equipment. The La Salle and Pennsylvania Hotel cases previously cited are deemed a complete answer. Buck v. Jewell-La Salle Realty Co., 1931, 283 U.S. 191, 51 S.Ct. 410, 75 L.Ed. 971 and Society of European Stage Authors & Composers v. New York Hotel Statler Co., D.C.S.D. N.Y.1937, 19 F.Supp. 1.

■ The further argument along those lines, that Muse-Art Corporation is simply a private conduit, whose product is not available to the general public, is answered by Judge Woolsey's discussion in the Statler Hotel case, supra, 19 F.Supp. at pages 5–6. For that matter, all who participate in the infringement are jointly and severally liable. Ted Browne Music Co. v. Fowler, 2 Cir., 1923, 290 F. 751, 754. It can hardly be claimed that Muse-Art's production of the music was not a participation.

Defendants' additional contentions based on the Communications Act, 47 U.S.C.A. § 605 seem inapposite. No connection can be discerned between that act, which forbids improper disclosure or divulgence of wire or radio communications, and the present case.

■ Finally, defendants, by their motion for judgment on the record, assert that plaintiffs have not proved their cases. To the contrary, however, this Court has found that the plaintiffs owned the compositions, and that unauthorized public performances of them for profit were made by defendants. The finding that the compositions were played at the time and place alleged is based upon the direct testimony of a credible, uncontradicted witness. As to the evidence that the music originated from the Muse-Art studio, and not from some other mechanical source, it is circumstantial in part. Circumstantial evi-

**136**

dence, however, is not necessarily of less probative value than direct—and may well be of more. In re Young's Estate, 1943, 347 Pa. 457, 32 A.2d 901, 154 A.L.R. 643; Lukon v. Pennsylvania R. Co., 3 Cir., 1942, 131 F.2d 327, 329. See United States v. Allard, 3 Cir., 1957, 240 F.2d 840.

■ In this civil case, plaintiffs were of course not required to establish their case beyond a reasonable doubt, but merely by a preponderance of the evidence. It was not plaintiffs' burden to prove their case beyond every possible contrary hypothesis. In argument the defense was replete with suggestions that the performances might have been given by a radio or television set, a "juke box" or other phonograph.

■ Evidence along such lines was peculiarly within defendants' knowledge and ability to produce—as were other elements of the case whose discussion would unduly lengthen this discussion. The distance to which the plaintiff must carry his burden of proof is considerably shortened when his opponents decline to offer evidence peculiarly within their control. Selma, Rome & Dalton R. Co. v. United States, 1890, 139 U.S. 560, 567, 11 S.Ct. 638, 35 L.Ed. 266; Fleming v. Harrison, 8 Cir., 1947, 162 F.2d 789; Skeen v. Stanley Co. of America, 1949, 362 Pa. 174, 66 A.2d 774.

■ Defendants' counsel took the recognized risk of moving for judgment on the record without introducing any evidence whatever, and upon consideration of that record, the Court finds that their motion must fail.

■ The relief to which plaintiffs are accordingly entitled under the act comprises an injunction, and minimum damages of $250 for each of the four infringements. Since actual damages were not shown, the statutory minimum may be applied. Westermann Co. v. Dispatch Printing Co., 1919, 249 U.S. 100, 39 S.Ct. 194, 63 L.Ed. 499; Jewell-La Salle Realty Co. v. Buck, 1931, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978.

■ Plaintiffs have requested an award of expenses under Rule 37(c), Fed.R.Civ.P., 28 U.S.C.A. for expenses incurred due to defendants' failure to admit certain facts within ten days pursuant to plaintiffs' requests for admissions under Rule 36. No showing of actual expenses incurred in that connection has been made. Assuming for discussion, however, that defendants' failure to file sworn denials or to give substantial reasons for failure to admit is a technical violation of the rules, this Court is of opinion that no showing has been made which justifies an award of expenses under Rule 37(c).

The Copyright Act makes the following provision for cost and attorney fees:

"§ 116. Costs: attorney's fees— In all actions, suits or proceedings under this title, except when brought by or against the United States or any officer thereof, full costs shall be allowed, and the court may award to the prevailing party a reasonable attorney's fee as part of the costs." 17 U.S.C.A. § 116.

■ Accordingly, plaintiffs are entitled to full costs. As to attorney fees, however, the matter is settled as being peculiarly within the discretion of the awarding court, based upon its knowledge of the value, the amount involved, and extent of the professional services rendered. Hendricks Co. v. Thomas Pub. Co., 2 Cir., 1917, 242 F. 37; Metro Associated Services v. Webster City Graphic, D.C.N.D.Iowa 1953, 117 F.Supp. 224.

■ Accordingly, and after reviewing awards in comparable cases, this Court in its discretion has determined that an attorney's fee in the amount of $250 is reasonable. Although the length of this opinion itself indicates that the trial involved a number of points of law, only two witnesses were heard. The elaborate and excellent briefs of counsel were in part necessitated by the fact that the case was of first impression as to the mechanical means of transmitting

the music, and defendants should not be unduly burdened as a result of that circumstance. In a number of cases involving a single infringement, the courts have seen fit to award counsel fees of $100. Buck v. Savoia Restaurant, D.C. S.D.N.Y.1938, 27 F.Supp. 289; Buck v. Jewell-La Salle, D.C.W.D.Mo.1929, 32 F.2d 366, affirmed 1931, 283 U.S. 202, 51 S.Ct. 407, 75 L.Ed. 978; Dreamland Ball Room v. Shapiro, Bernstein, 7 Cir., 1929, 36 F.2d 354.

The facts, as discussed herewith, are incorporated in the Court's findings of fact.

### Conclusions of Law

1. This action arises under the Act of March 4, 1909, 35 Stat. 1075, 1081, § 25, Title 17 U.S.C.A. § 101, and this Court has jurisdiction of the action.

2. The defendants failed to adduce any evidence in support of their affirmative defense that the plaintiffs and the American Society of Composers, Authors and Publishers effectuated a combination and conspiracy to monopolize the field of musical composition in violation of the Anti-Trust Laws. The defense of Anti-Trust violations set up by defendants is dismissed.

3. The defendants, The Lew Tendler Tavern, Inc., and Muse-Art Corporation, are liable in damages, jointly and severally, for infringement of the copyrights in the compositions "Blue Heaven;" "Smile, Darn Ya, Smile;" "Together" and "If I Loved You" on July 5, 1951, by the unauthorized public performances for profit of these compositions at the premises of the defendant, The Lew Tendler Tavern, Inc.

4. Plaintiff, Leo Feist, Inc., is entitled to the injunctive relief sought against both defendants and is entitled to receive from the defendants, jointly and severally, damages in the amount of $250, plus costs and a reasonable attorney's fee.

5. Plaintiff, De Sylva, Brown and Henderson, Inc. (whose former corporate name was Crawford Music Corporation) is entitled to the injunctive relief sought against both defendants and is entitled to receive from the defendants, jointly and severally, damages in the amount of $500, plus costs and a reasonable attorney's fee.

6. Plaintiff, Williamson Music, Inc., is entitled to the injunctive relief sought against both defendants and is entitled to receive from the defendants, jointly and severally, damages in the amount of $250, plus costs and a reasonable attorney's fee.